May 6.
Judge Green.
The appellants, on the 4th of June, 1803, filed their bill against Gregory Johnson and Thomas Goode, who had severally obtained judgments against them as administrators of J. E. Royall, deceased, seeking to injoin any further proceedings upon those judgments, upon the ground, that since the rendition of the judgments, suits had been brought and were depending against them for the recovery of the whole estate of which their intestate died possessed, by a title paramount to his. The injunction was awarded by chancellor Wythe. Goode answered, and relied, that his debt was of equal dignity with any *422 other due from the estate; and that, independent of the sued for by the claimants mentioned in the bill, other assets of their intestate had come to the hands of % the plaintiffs, sufficient to pay his debt in a due course of administration. The bill was amended, and Edwards and Moore, who had severally obtained judgments against the plaintiffs, were made defendants, and an injunction awarded as to them. The bill was again amended, and it was charged that a judgment had been rendered against the plaintiffs in one of the suits mentioned in the original bill for the slaves, from which they had appealed; and that, (if they should lose their slaves,) they had more than fully administered, and were greatly in advance for the estate.
The administration account of the plaintiffs was referred to a commissioner, who reported a balance due the administrators of 60l. 63/4d.; that they had paid judgments and executions amounting to 721l.; but, that they had paid bond debts and simple contract debts, inferior in dignity to Goode’s claim, to the amount of 898l. 11s. 23/4d.; and that Goode’s claim, after crediting a small payment, was 254l. 14s. 2d. Upon the coming in of this report, the injunction as to Goode was dissolved. At a subsequent term, the court, without reinstating the injunction, recommitted the said report to the commissioner, with directions to ascertain and report how much of the assets credited to the estate in the report, proceeded from the sales of the slaves in controversy; and from what source the residue of those assets were derived, and to state an account between the plaintiffs and the defendant Goode. In pursuance of this order, the commissioner reported that the balance due the administrators, allowing all debits and all credits, was on the 1st of September, 1808, 132l. 19s. 7d.: that there was credited on account of the sale of slaves up to September 1808, 557l. 16s. 111/2d., of which 197l. 14s. 6d., was injoined; that other assets credited in the account, were injoined to the amount of *423 45l. 9s. 21/4d.; that setting off Goode’s judgment against debts due by him to the plaintiffs individually, he was indebted to them 128l. 17s. 31/2d.; and that the estate of J. E. Royall, was indebted to Goode on simple contract, in the sum of 15l., with interest from the 30th of July, 1800. The account of assets, therefore, as applicable to the payment of judgments on the 1st of September, 1808, was as follows:
Whole amount of assets, 15581. 19s. 7jflf.
Deduct sales of disputed negroes, 5571. 16s. lljd.
And assets injoined, 45Z. 9s. 2id.
......— 603Z. 6s. 1 gd.
Applicable to pay off debts, 9551. 13s. 5fd>,
Paid on judgments
and executions, 721Z. Os. 0d.
Paid Goode’s judgment, 254Z. 14s. 2d.
---- 9751. 14s. 2d.
Over-paid, 2Ql. Os. 8|d,
Paid bonds and simple contracts, including commissions, and expenses of administration $ which last, to wit commissions, and expenses of administration, had a priority to all
debts, 410Z. 11s. 2|d.
Add, according to 2d report, 72Z. Os. 8 jd.
---——— 482Z. Us. lOgd.
Over-paid, unless the negroes shall turn out to be assets.
502Z. 12s. 7d.
*424 Upon this report, the chancellor decreed on the 21st of February, 1810, that Goode pay to the plaintiffs, the balanee reported against him, with interest: That the plaintiffs pay out of the assets of their intestate to Goode, the interest, unless they shewed at the next term, that the same had been paid ; that Goode’s judgment, be perpetually injoined; and that the plaintiffs, should pay to Goode, his costs.
Afterwards, Enoch Moore answered. He does not state the dignity of his claim ; but says he sued in 1808, and obtained judgment; and in the next year, (notwithstanding the injunction,) he sued and obtained judgment, for a devastavit. He states, that he knows nothing of the situation of the estate, or of the claims to a part of it set out in the hill; but that the plaintiffs had repeatedly promised him payment. In 1817, the injunction as to Moore was dissolved. In 1816, an order was made at the rules, abating the suit as to Goode, by his death, and awarding a scire facias to revive against his executors; and there was afterwards an order to revive at rules against them. They appeared and filed exceptions to the commissioner’s last report, the particulars of which it is not necessary to state.
Upon the hearing of the cause, the chancellor, declaring that the injunction ought not to have been granted, set aside all the orders in the cause which conflicted with what followed, and decreed that the injunctions awarded against Goode, Johnson, and Edwards, be dissolved, and the plaintiffs’ bill dismissed with costs as to all of the defendants.
The first question which occurs, is, whether this was a fit case for the jurisdiction and relief of a court of equity. If the title of John E. Royall, to the slaves for which his administrators were afterwards sued, and which were recovered against them, had been questioned, before the judgments of Johnson and Goode were recovered against them, the administrators, in defending themselves at law, *425 must either have admitted those slaves to have been assets, in which case, they would have been conclusively bound; or must have denied that they were assets, in which case the title must have been tried in those suits; and if found to be assets, that finding must at law have been Hive, even although the slaves should afterwards be recovered upon a title, adverse to that of John E. Royall. Or if they had, in those suits, been found not to be assets, that finding, in like manner, would at law be conclusive upon those creditors, even if they should have been afterwards ascertained to belong to J. E. Royall. In such case, there would have been no possible means of avoiding the hazard of great, and at law irremediable injustice, to one or other of the parties, but through the aid of a court of equity, by suspending the proceedings at law, until the title to the slaves in question could be ascertained, in a way which would be binding on all the world, when complete justice could be done to all parties. In such a case, where the law affords no adequate remedy, I think a court of equity lias jurisdiction, upon its general principles. And this view of the subject, applies to Moore’s and Edwards’s judgments also, inasmuch as the title to the negroes was not settled, when those judgments were rendered, if indeed it is yet settled, which does not appear in this record* But, there is a stronger reason for supporting the jurisdiction of a court of equity, as to Goode’s and Johnson’s judgments, which were rendered, before the suits for the recovery of the negroes were instituted against the appellants. Those judgments were, when this bill was exhibited, conclusive evidence at law, of assets against the appellants; for, the act declaring that executors should not be personally liable beyond the assets of their testator, by reason of any mis-pleading, false-pleading, or non-pleading, did not pass, until 1807. The consequence Would have been, that acting bona fide, in the belief that they had, in their hands, sufficient assets for the payment of debts, and submitting without defence to judgments, as *426 in justice they were bound to do in such case, those ex« editors might have been bound without default or even ncS%ence on their part, to pay the debts“out of their own ' packets, because of an unknown and unsuspected defect in their testator’s title to a large portion of the property, which came to the hands of his executors as his, unless a court of equity in such case could give relief.
The next question is, whether, the court having jurisdiction, such a case is made out by this record, as to entitle the plaintiffs to relief. As to the judgments of Goode and Johnson, it does not appear which was entitled to priority. But, both were entitled to priority over those of Edwards and Moore. If Goode’s had a priority over Johnson’s, then, from the state of the accounts, (Goode’s judgment being paid by the administrators,) it appears that all the assets which are ascertained to belong to J. E. Royall’s estate, which came to the hands of his administrators, have been duly applied to the payment of debts of dignity superior to that of the claims of Johnson, Moore and Edwards; and the decree, as to those parties, ought to be reversed with costs, against Moore, the injunctions against those parties reinstated, and the cause remanded to the superior court of chancery for further enquiry tobe made, as to the state of the assets of J. E. Royall.
As to Goode’s case, it seems that the claims against him which were set off against his judgment, and upon which' he was found to be indebted to the plaintiffs, were individual claims against him by them, arising during the pendency of the suit, and which were in no way put in issue by the parties in their pleadings. The decree, therefore, of Feb. 21, 1810, founded upon those accounts, was probably erroneous, unless it could be justly inferred from the record, that those matters were brought into the cause by the consent of the parties; and, therefore, if that decree was interlocutory and in the power of the court, it ought probably to have been corrected, although abstractly just. But, if final, the court could not meddle *427 wilh it, and all the proceedings in relation to ii in the oilice and in court, subsequent to the term at which the decree was pronounced, were irregular and erroneous. I think the decree was final, and out ot the power ot the court below, otherwise than by a bill of review. And the question upon this appeal is not, whether that decree was erroneous ; but, whether the appeal is from the decree of 1818, and not from that of 1810. I have carefully examined all the cases decided in this court, which I can find reported upon the question of the interlocutory or final character of decrees.(a) And I do not find, that where the rights or responsibilities of the several parties are perfectly distinct and several, and where a final disposition of the cause as to one with a direction as to the payment of costs as between him and the adverse parly, does not in any degree affect the rights or interests of any other party ; and where nothing which can be brought into the cause by any other party, or which can be done by the court as to the other party, can by possibility affect the lights or interests of the parly as to whom such decree has been made, such decree lias ever been considered as interlocutory ; nor do the principles asserted in these adjudged cases, lead to such a decision. Without going into a detailed examination of the circumstances of those cases which are reported, it is sufficient to say, that in all of them, it was apparent, that the court intended to proceed further in the cause, and that it was necessary to do so, in order to put a final end to the controversies between the parties, as to whom the decree was made; or, that the interests of the parties as to whom a decree was made, might be affected by the further proceedings in the cause, in relation to the other parties. The only case which *428 might be supposed to be in opposition to this general conclusion is, that of Alexander vs. Coleman, in which ^18 ju(%es were equally divided. But I do not think that case is opposed to this conclusion, and I should think upon the principles then asserted by judges Roane and Brooke, who considered the decree in that case not to be final, that the decree in the case under consideration, was final as to Gordon. Judge Brooke distinguished that case from the case of Ball vs. Ball, relied on by judges Cabell and Coalter. In the last mentioned case, a bill against several defendants was dismissed as to one of them, and remained in court as to all others. He observed, that the decree « was not final sc against Alexander j he had not been decreed to convey 5< his title according to the respective interests of the si parties, as prayed by the bill, nor could such a decree « be pronounced, until the quantum of each had been astf certained ; that the continuance of the cause as to the other parties by their consent, cannot be considered as “ the act of the county court; and if that were material, « no costs were decreed against Alexander, which would “ have followed a final decree, unless for reasons which s< ought to have been stated in the decree he was to pay ** no costsand for these reasons, he was of opinion, that the decree was interlocutory.
Judge Roane was of the same opinion, because the first enquiry properly was, whether the plaintiffs had a right to demand partition of their father’s estate, as claimed by the bill, and until that question was decided, Alexander’s rights could not properly be affected; and although his rights were decided in the first instance, yet if it had been afterwards ascertained in the further prosecution of the suit, that the plaintiff's had no right, the decree against Alexander could be, and ought to have been, set aside by the same court. He also insisted, that the decree was interlocutory, because it did not direct a conveyance according to the prayer of the bill, because *429 no costs are decreed against Alexander, because Alexander was dismissed from the court only by implication arising from the terms of the continuance, and because lie considered the question as settled by the former decisions of the court, which he thought had established the rule, that a decree could not be final unless the court had finally decided the cause in all Us parts. This last assertion does not appear to me to be supported by any case decided in the court. Not one of the reasons specifically assigned for considering the decree as interlocutory in that case, applies to the case at bar. There was no decree for costs in that case; here, costs are decreed. In that case, the court had not decreed a conveyance according to the prayer of the bill; here, the bill praying against Goode an injunction only, the decree perpetuated the injunction, and not only gave all the relief prayed for, but went further, and gave the plaintiff what he did not ask for. In that case, it had not been ascertained that the plaintiffs had any right in the subject of controversy, a part of which was in Alexander’s possession. That question was to be determined by the after-proceedings in the cause, between the plaintiffs and the other defendants ; and if it were found that the plaintiffs had no right, Alexander’s possession ought not to have been disturbed ; and so Alexander’s interests were still involved in the after-proceedings in the cause, and liable to be affected thereby. But in this case, the only questions were as to the amount and due application of the assets, in the hands of the plaintiffs, to the payment of their intestate’s debts. Goode claiming to be a creditor, together with other creditors, was brought before the court. Goode’s debt was ascertained to be paid, and he to be a debtor to the plaintiffs. No matter then, as to him, what was the state of the assets, or how they should be applied to the payment of debts. He was no longer interested in these questions; and however they were decided between the either parties, such decision could not possibly affect *430 his rights or interests, nor make it necessary or proper to vary the decree as to him. To what possible purpose then, should he be considered as remaining in court, but to witness a contest between other parties, in which he had possible interest, whilst he might be compelled to pay the amount of perhaps an erroneus decree," without the possibility of being relieved, until the termination of a tedious litigation, between other parties, in which he had no interest ? If the decree was final, Goode might have appealed, and it may be said, that if he had done so, he might have reversed the decree, and again have been thrown as a claimant on the assets; and thus have impeded the progress of the cause in the court below, as, pending such appeal, no final disposition of the assets could have properly been made; since such disposition might be ascertained to be wrong, by the event of such appeal ¿ and that great inconvenience might arise from such a course. To this it may be answered, that precisely tho same inconvenience would arise from an appeal, after a final decree, as to all the parties: and that an appeal from a decree in chancery, does not suspend the power of the court below, over the cause; and the court may still proceed according to its sound discretion, taking care not to proceed so far as to hazard any injury to the rights of any party, as they may ultimately appear.(b)
The supreme court of the United States has, by statutes appellate jurisdiction only in cases of final decrees and judgments; and, in Ray vs. Law,(c) it was said by tho chief justice: “ The court is, however, of opinion, that « a decree for a sale, under a mortgage, is such a final « decree as may be appealed from.”
In England, final decrees in chancery bind assets in the hands of executors as do judgments at law. But, interlocutory decrees have no such effect. Thus, a decree di *431 reeling a commissioner to take an account of the plaintiff’s demand, and of the assets, being interlocutory, does not bind the assets.(d) But a decree, that the plaintiff recover of the executor a specific sum to be paid in a due course of administration, and directing an account of assets, is final, as to the recovery, and binds the assets.(e)
Upon the whole, I am of opinion, that the decree, as to Goode’s representatives, is erroneous, and ought to be reversed, with costs against them : that the cause, as to them, ought to be sent back, and all the proceedings against them set aside; and the scire facias, to revive the suit, quashed, as having improvidently issued ; and that the appellants pay them their costs in the court of chancery.
Judge Coalter.
I think this a very strong case, requiring the interposition of a court of equity.
The administrators, having a right to suppose there were assets sufficient, were promptly paying off the debts of their intestate, without much respect to their dignity ; and many debts, due by judgments against him in his lifetime, and against them since his death, as also debts due by bond and account, were so discharged, within a very short time after his death.
In this posture of affairs, a suit or suits are instituted, claiming a great portion, consisting of slaves, of what they supposed were assets of their intestate in their hands to pay his debts, and which have probably been finally taken from them. If so, it would seem pretty manifest from the accounts taken, that debiting them with all the assets which they have received, and giving them credit for no more than the debts of superior or equal dignity to *432 those injoined, including their commissions, and necessary expenses, there would be nothing left, even to pay Goode’s debt. I have not, however, for the reasons hereafter stated, thought it necessary to enquire into that as ^at debt has been paid by them, out of their own estates, Suffice it to say, that it has probably priority to the other debts injoined ; and that they have a right to retain it, so that if the slaves have been lost to the estate, it does not appear that there are any assets to pay those debts : The decree, therefore, dissolving the injunctions and dismissing the bill as to them until the contrary appeared, was erroneous.
As to Goode, the decree dissolving the injunction as to him, was probably also erroneous, for the reasons above-stated ; and for this further reason; if the whole of the debts paid had not a legal priority over his, I am not prepared to say, that if administrators are promptly and bona fde paying off debts, believing they have assets sufficient to discharge all, and a large portion of those assets, are taken from them by a title paramount to that of their intestate ; of which claim, they had no knowledge or suspicion, so as to guard themselves against such unforeseen events; that such payments ought to be considered a devastavit, against which a court of equity could not relieve. As to this, however, I am not to be considered as giving any positive opinion.
Be this as it may, the injunction as to Goode, was dissolved on the 20th of September, 1808 : but in as much as there were private accounts between these parties, in June, 1809, for reasons appearing to the court, doubtless the consent of the parties, without which I presume no such reference would have been made, these accounts, not the accounts between the intestate and him, are referred. This was probably done by consent, without amending the bill, in order to put a final end to all matters between them. The account was taken, and after giving Goode credit for his judgment at law, a considerable balance *433 was found due from him, to the appellants. No objection is made to the taking of this account, nor was there any exception thereto. 4
On this, the chancellor perpetuated the injunction $ no execution having been taken out in consequence of its dissolution, and probably because of these proceedings, and decreed Goode to pay to the appellants, the balance found due in that account, and decreed him his costs.
There was no appeal from this decree by either party; but Goode having died before its execution, a scire facias was awarded at rules, it does not appear on whose application, to revive against his executors : It was accor-
dingly revived, also at the rules; and the executors filed exceptions to the report of the private accounts above stated.
After this, the court setting aside ail previous orders, inconsistent with the final decree, dismissed the appellants’ bill as to all the defendants, whether before the court or not.
This, as above stated, I think was erroneous, as it regarded the relief, sought against all, exee,pt the executors of Goode, and that, on the contrary, the injunction against Moore ought to have been re-instated.
As to the executors of Goode, if the decree against him above mentioned, had not been final, and if 1 could consider that decree as now before me, I might possibly reverse it, at the instance of the appellants, in order to let them in to shew that he was not entitled to a credit for his judgment, against their private account. I should not, as at present advised, he willing to reverse it for the alleged error in taking the account of those private transactions : But whether it ought to be reversed for either of those reasons, is not important to enquire, in as much as I consider that was a final decree, never appealed from by either party. That the scire facias was improvidently awarded, on the supposition that it was interlocutory, and that the decree finally dismissing the bill as to Goode’s *434 representatives, and which is the decree appealed from, was consequently erroneous, the decree against Goode, not being within the power of the court of chancery, except in a bill of review.
Every argument which influenced my opinion in favor of the finality of the decree, in the case of Alexander vs. Coleman, applies to this case; and indeed more strongly. Here there was no joint interest between the defendants : Facts which would justify a dissolution as to some of the parties in such a case as this, might not necessarily justify it as to others. If the assets were exonerated from Goode’s judgment, in consequence of its being paid off by the private transactions, and if that would leave a greater fund applicable to the other judgments, and he wished to controvert those charges, and to shew that there was a debt still due to him from the estate, he ought to have appealed, in order that the chancellor might know what final decree to make as to the other parties.
On a motion for a dissolution afterwards as to others, would it have been competent for the appellants to oppose that motion, simply by alleging, that though it may be right, if the decree as to Goode is never reversed, that yet that decree is not final, and may be reversed, and if it is, there will be nothing to pay these creditors ? This- argument, if good, would not only prevent any dissolution as to others, but even suspend any final decree as to all, until Goode’s decree shall, in some way or other, be made irreversible. On the contrary, if Goode had appealed, and the event of that appear might have varied the claims of the other defendants, the appellants could well allege this as a reason for suspending the decision as to them, until that event was known. This would prevent much delay as well as injustice: pending this appeal, the case could be prepared as to the other parties, and a correct final decree pronounced from which no appeal would be necessary. It is highly expedient, therefore, that such a decree as this, should be considered final, from which either party may appeal.
*435 I therefore concur in the decree prepared to be entered in this case.
Tiie following was inserted as the decree of the court:
The court is of opinion, that this case was proper for the jurisdiction of a court of equity; and that the decree of the 21st of February, 1810, was final, as to Goode, and after the term at which it was pronounced, no longer in the power of the court of chancery, hut by a bill of review ; and that, therefore, the scire facias awarded at rules to revive the suit against Goode’s executors, was improvidcntly awarded, and ought to have been quashed at the costs of the plaintiffs. The court is further of opinion, that it does not appear from the accounts taken in this cause, whether assets enough of their intestate came to the hands of the appellants, to pay to the defendants, Gregory Johnson, Edwards and Enoch Moore, the amount of their several claims in a due course of administration, after deducting the just commissions of the administrators and the expenses of the administration, and satisfying debts of superior dignity; and that further enquiries should have been made as to that point, by a commissioner, and in the mean time, the injunctions, as to these defendants, should have been continued ; and that the said decree is erroneous : Wherefore it is decreed and ordered, that the same be reversed and annulled, and that the appellees, Enoch Moore, out of bis own estate, and John Goode and John Tucker, executors of Thomas Goode, deceased, out of the assets of their testator in their hands to be administered, do pay to the appellants their costs, by them in this court expended, and that the cause be remanded to the said superior court of chancery; that the injunctions awarded therein against the defendants, Johnson, Moore and Edwards, be re-instated, and the cause otherwise further proceeded in, according to the principles of this decree.

 2 Wash. 200, Davenport vs. Mason. 2 Wash. 300, Young vs. Skipwith. 1 Call, 54, Grymes vs. Pendleton 2 H. & M. 589, Ellzey vs. Lane, 3 II. & M. 136, Aldridge and al. vs. Giles and al. 1 Munf. 339, Templeman vs. Steptoe. 2 Munf. 42, Goodwin and al. vs. Miller. 2 H. & M. 558, Fair-fax. vs. Muse. 2 H. & M. 595. Allen vs. Belches. 3 Munf. 29, Shepherd vs. Starke. 4 H. & M. 382, Chapman vs. Armistead. 6 Munf. 328, Alexander vs. Coleman.

 Gwynn vs. Lethbridge, 14 Ves. jr. 585. Wood vs. Griffith, 19 Ves. jr 550.

 S Cranch, 179.

 10 Ves. jr. Perry vs. Philips.

 Morrice vs. The Bank of England, Ca. Temp. Tal. 217. Same case, 2 Bro, Par. Ca. 2d. Ed. 465, as commented on in Perry vs. Philips.