Carr, J.
All decrees are either interlocutory or final: there is no middle class. In the progress of a cause, it often becomes necessary to make orders of different kinds, in order to enable the court to come at the whole case, or to settle the details, after the principles of the cause are decided: all these are interlocutory orders or decrees. But when a decree makes an end of a case, and decides the whole matter in contest, costs and all, leaving nothing further for the court to do, it is certainly a final decree. Let us try the case before us by this test.
*119 Branson filed his bill to recover 1000 acres of land: this was the sole object of it. The defendants Haney and wife filed their cross-bill, claiming that if Branson should recover the land, they might be indemnified out of the assets of his father descended to him. To Branson the chancellor said, he could not give him land, hut he would give him the value of it in money; and he decreed his receiver to pay him 20,000 dollars. To Harvey and wife he said, that no lands had descended to Branson from his father, in respect of which he was liable on his father’s warranty; but that there was a fund in the power of the court, which he was seeking, and which the court held liable to their indemnity; and that fund they should have, so far as it would go: accordingly he directed his receiver to pay this fund, so far as it was in hand, and to continue to apply it in the same way, as it shall accrue. The costs are given in both cases; and the bill dismissed as to some of the defendants, against whom no decree could he made. Now, did not this make an end of the business ? What remained to be acted upon ? What more did the court mean to do, or could it do ? I cannot conceive. It is said, that the land was not all sold, from which the fund was to arise : but that, in my judgment, has no effect on the character of the decree. The court had done all it meant to do, or could do; and, in the suit of Borden v. Bowyer, the rights and interests in this land, and in the proceeds of it, had been settled, and also the mode of sale and distribution. Branson’s share both of the money raised and of the land to be sold, was settled at a ninth : all his share of the money in hand, the court had decreed to Harvey and Bowyer, and all the proceeds of future sales, till they should be paid. To say that this was not a final decree, would be saying that no final decree could be made in such a case. How many decrees do we see, directing money to be paid at stated times, thereafter; decreeing an annuity for instance: hut it never was doubted, that such decrees wore final, if intended to bo so.
*120 But it is said, that this case is so blended with that of Borden v. Bowyer, as to have become a part of the same cause, and that the decree being, as to Borden v. Bowyer, clearly interlocutory, this must be so as to Branson v. Harvey too. But how are these blended ? there has been no order of consolidation, and I do not understand how without that, two distinct causes can become one. A consolidation of them, would seem to me very improper; their objects are different, and so are the parlies in interest. The suit of Borden v. Bowyer is not before us; we have no copy of the record; I can speak of it, therefore, only from extracts from it, introduced into this case. Its general object seems to have been, a call upon the representatives of Benjamin Borden the younger, to account for and distribute the proceeds of all the lands, which Benjamin Borden the elder directed should be sold, and the proceeds divided among his children. To this suit all the children or their representatives must have been parties. But die bill of Branson, was for a specific devise of 1000 acres of land to his mother; and no child was made a party to this; nobody but Harvey and wife. How then could the suits have been consolidated ? Would it have been right to have clogged Branson, who had a specific object in view, by forcing him into the general contest, and affecting him by all the costs and all the delays, arising from such a number of parties, and such numerous subjects and points of litigation ? The causes were connected in this way only: the chancellor declining to give Branson land, threw him upon Harvey and Bowyer’s portion of the general fund, collected in Borden. v. Bowyer; and also gave Harvey and Bowyer indemnity out of Branson’s share of that same fund : but this could not make the two suits one.
It is said the chancellor heard them together, and pronounced one decree in them all. It is true the chancellor found it more convenient to have one hearing, and to pronounce one decree, than two; but it was never in his *121 thought, that by this proceeding he was consolidating them: for throughout both his decrees, he treats them as distinct and separate suits; and it may be seen at a glance, what part of the decree is referrable to the one, and what to the other.
I cannot think then, that this case is, in any respect, made a part of Borden v. Bowyer. But if it were, and if the decree in Borden v. Bowyer, was clearly interlocutory, it would not follow, that the decree here must of necessity be so too. The claim of Branson was certainly a distinct one: none of the parties to the other suit, none of the heirs of Borden, participated in that claim : he claimed for himself alone, the share of his mother; her 1000 acres. Even, then, if he had carried this separate claim into the general suit, there might have been a final decree as to him, without any decree on the other parts of the cause. For, I think, this court clearly right in Royal’s adm’r. v. Johnson, where it decided, that where a decree is made as to one of several defendants, the interests of that one being wholly unconnected with the others, and he being directed to receiye or pay costs, such decree is final as to him, though the cause may be still pending in court as to the rest. Now, I have shewn, that the decree makes a complete disposition of the subjects of the bill and cross-bill of Branson v. Harvey, with the costs; and these subjects are so intirely unconnected with the objects of Borden v. Bowyer, that it would be difficult to imagine, how any thing subsequently done in this last, could affect the right or interest of Branson.
But I am strongly inclined to think this decree is final as to Borden v. Bowyer itself. I can only judge from the extracts from the record of that case, before mentioned, and the decree itself. The objection taken at the bar, I understood to be, not that the court had left any part of the case undecided, but that the decision was not final, because the commissioner of the court was still to go on and sell the lands, and because liberty was reserved to the parties to apply to the court to supersede him, or to .appoint one or *122 more commissioners to act with him, or to succeed him, or to have the unsold lands divided among the parties in the proportions settled by the decree. But this does not seem to me, to make the decree interlocutory. The commissioner was not to report his proceedings : the court did not mean to pass upon them, in order to their validity. The power to sell, included the power to convey: and he was to distribute the money in settled proportions, as it came to hand. The liberty reserved to the parties to apply to the court, was merely to enable it to stop the commissioner, if he should be found abusing his trust; or to stop him, if all the parties should agree to divide the unsold lands, in the proportions settled by the decree. No leave was given to apply to the court to change any part of the decree in principle. We know, that in all cases where lands are to be sold, and the money applied to the use of particular persons, if all interested be sui juris and agree upon it, they may apply to equity, and elect to have the land. The leave given here, was nothing more : they could have done it of themselves in pais. But does not the very circumstance of leave being given to the parties, shew that the' decree is final, and they out of court ? If the case was still pending, and the parties in court, what need could there be of leave to apply to the court ? In England, I find it every day’s practice to appeal from decrees, where leave is granted to apply to the court for its assistance. It seems never to have been thought of there, that such leave makes the decree interlocutory.
It seems to me, that such a doctrine in this case, would be calculated to do much mischief. How long will you keep the decree open ? The parties may apply or not: it is perfectly optional with them. The decree may be for years in a course of execution. There seem to be various scraps and slipes of land, the remnants of a large body, scattered here and- there, through two or three counties. The commissioner is not to sell at once, or at auction: this would involve a sacrifice, which the parties did not wish. Years may *123 pass away, before lie closes the agency. And would it not be productive of fearful mischief, to decide, that during all that lime, there shall be a lis pendens ? that every thing done in the cause, may be undone ? that all the titles, (perhaps, two or three hundred) supposed to have been settled by the decree, are still liable to be disturbed ? and that every one who has purchased since the decree, resting (as he thought) on the firm foundation of a final decree not appealed from, is to be taken as a lite pendente purchaser? Such a doctrine promulgated, would shake many titles to their foundation.
I have met with but one case in our reports, which may seem to apply to this point; the case of Sheppard v. Starke. That was a bill brought against an executor by a distributee, for an account, and division of the residuum: a certain sum was decreed against the executor, to be paid to the children on their executing bonds &sc: “ and liberty was reserved to the parties, or either of them, to resort to the court for its further interposition, if it should be found necessary.” To this decree, the executor filed a bill of review, upon which proceedings and a decree were had; and the cause came up by appeal. On the argument here, not a word was said about the character of the decree, or the regularity of the bill of review. This court prefaced its opinion on the merits, by saying, “ the court is of opinion, that though either of the parties to the original decree pronounced in this cause, might, in a summary way, have resorted to the court of chancery, for its further interposition, if deemed necessary, (under the special reservation in the decree contained), they might also proceed by hill, as was done in the present instance ; that mode being equally justified by the reservation aforesaid, and beneficial to the parties.” It is clear to me, that the court had no intention, there, of expressing an opinion, that the decree was interlocutory: if so, it could not have sustained the bill of review, which, we know, can only be filed after a final decree ; for not even the consent of parties can make a decree final, which in its nature and terms *124 is interlocutory, as the court had decided in M’Call v. Peachy, 3 Munf. 296.
Upon tire whole, I am of opinion, that the.decree in the two suits of Branson v. Harvey, was final, and not being appealed from in time, the appeal must be dismissed.
Green, J.
I am of the same opinion. In my judgment, every decree which leaves nothing more to be done in the cause, no subject to be acted upon or disposed of, no question to be decided by the court, is in its nature final; and that, therefore, this decree, in respect both to the case of Borden v. Bowyer and the cases of Branson and Harvey, is final. But I have some doubts, whether this opinion be quite conformable with former adjudications of the court, on questions touching the character of decrees, whether interlocutory or final.