Carr, J.
This case presents at the outset, a question of jurisdiction. If the decree of May 1826 was interlocutory merely, the case is properly before us, but if that was a final decree, the appeal was improvidently allowed, as more than three years had elapsed from the date of the decree to the application for the appeal. We have had many cases here, where the question turned on the character of the decree. Without going into a particular examination of them, I shall avail myself of some of the conclusions which some of my brethren have drawn from them. In Alexander v. Coleman, 6 Munf. 339. 340. judge Cabell said,—“ I have examined with great attention every case in this court on the subject of interlocutory decrees, from Young v. Skipwith, 2 Wash. 300. to the present time”—“ They were all without exception, decided on the same general principle, that every decree which leaves any thing to be done in the cause by the court, is interlocutory as between the parties remaining in court.” In Royall v. Johnson, 1 Rand. 427. judge Green said,—“I have carefully examined all the cases decided in this court, which I can find reported, upon the question of the interlocutory or final character of decrees”—“ It is sufficient to say, that in all of them it was apparent, that the court intended to proceed further in the cause, and that it was necessary to do so, in order to put a final end to the controversy, between the parties, as to whom the decree was made.” In Harvey v. Branson, 1 Leigh, 108. the court laid it down, that a decree which left no subject to be disposed of, no question to be decided by the courtj was, in its nature, final; and judge Brooke very correctly added, “ as to the reservations in this decree, those, and all similar reservations, are, in my view, simply provisions for the execu *214 tion of the decree, as one final and conclusive, not reservat*ons any points for future consideration and decision.” These cases seem to me to take the true and clear distinction: where any thing is reserved by the court for future adjudication, in • order to settle the matters in controversy, the decree is interlocutory; but where, upon the hearing, all these matters are settled by the decree, such decree is final, though much may remain to be done, before it can be completely carried into execution, and though, to effectuate such execution, the cause is retained, and leave given the parties to apply for the future aid of the court. It is well known that until 1798, there was no appeal from interlocutory decrees; the prior statutes gave them from final decrees only. These laws did not define what should be taken as final decrees. The phrase was perfectly familiar to every student of the english law, and in the sense there settled, it was no doubt used by our legislature. We may then look to the english cases, to ascertain that sense. In England, no appeal could be taken except from final decrees. Yet do the books teem with cases, where the chancellor having at the hearing decreed upon the matters in controversy, an appeal is immediately taken to the house of lords, though various details are directed in execution of the decree, the cause retained, and leave given to the parties to apply to the court. These details are never considered as affecting in the slightest degree the finality of the decree : indeed, it is a settled rule, that the appeal does not suspend the proceedings under the decree, unless it is so ordered on particular motion, by the chancellor, or the house of lords; Gwynn v. Lethbridge, 14 Ves. 585. Waldo v. Caley, 16 Ves. 206. Willan v. Willan, Id. 216. In Waldo v. Caley, a testator gave his personal estate to his executors, in trust to pay to his wife the neat income, interest &sc. and injoined it upon his wife to lay out one half her income yearly in charities with the advice and assistance of his executors; the wife and executors differed about their power in selecting the objects of charity : the master of the rolls decided, *215 that the wife had the sole power, and was only in her discretion to ask the advice of the executors; that she was bound to lay out the half of her income yearly in charities; and declining, in this case, the usual course of having a scheme for applying the charity drawn up and laid before the master, he said,—“ The purpose may be answered by reserving to any of the parties liberty to apply, as there shall be occasion, so that if at any time there shall be ground for supposing, that the fund has not been fairly expended, the court may be called on to interfere.” Here, we see liberty reserved to any of the parties during the whole life of the widow, and thus, the cause retained for that whole period, so far as was necessary for that purpose : yet an appeal was immediately taken. I shall cite one more case—Morice v. Bank of England, Ca. Temp. Talbot, 218. 2 Bro. P. C. new edi. 465. (Let it be premised, that in England, final decrees bind assets in the hands of executors, but interlocutory decrees have no such effect, Perry v. Phelips, 10 Ves. 34). Certain creditors of Morice filed a bill against his executrix, praying the payment of their debts; she answered, confessing the bill; and the decree was, that an account of the personal assets be taken, and that those debts be paid in a course of administration: the bank, subsequently, sued at law and got a judgement against the executrix, as she could not in that court plead the decree : she filed her bill bringing the whole matter into equity, and praying protection : the chancellor decided, that the decree being first in time, had preference: an appeal was taken to the house of lords, where it was insisted that the decree was not final, being a mere order to take an account of the assets, and to pay the debts in a course of administration ; but the decree of the chancellor was affirmed, thereby pronouncing this a final decree. And in Perry v. Phelips, lord Eldon shews the difference between this, and an interlocutory decree; this being a decree “ ordering payment of sums, liquidated by the statement in the bill, and *216 the admission in the answer,” which rendered it a final decree, though coupled with an order for an account of the personal assets Sic. The supreme court of the U. States can. only receive appeals from final decrees. In the case of Ray v. Law, 3 Cranch, 179. the court held, that a decree for a sale under a mortgage, is such a final decree as may be appealed from.
Let us now examine the decree before us. Looking to the nature of the controversy, l apprehend, that but for the liberty reserved to the plaintiff to resort to the court, to have an order for her annuities which should afterwards fall due, there could have been no possible doubt that the decree of May 1826 was final. It had given to the plaintiff her whole claim, with all her costs. True, it had not decreed over against the land, in case the personal fund should prove deficient; and if she had been dissatisfied with this, she might have appealed. It is also true, that the decree had not, in words, decided the matter of ultimate responsibility between the two classes of defendants; but had it not in fact settled that point ? The representatives of the personal fund had prayed the court, if it should judge the land ultimately answerable, to decree against it directly, in exoneration of them; which the court ought certainly to have done (according to West v. Belches, 5 Munf. 187. and that class of cases) if it had considered the land liable over to the personal sureties. When, then, instead of doing this, the court decreed solely and exclusively against the personal sureties, did it not just as plainly declare, that the land is not liable over to them, as if it had said so in so many words ? and is not the practical effect of the decree (supposing it to have stopped there) precisely the same ? subjecting the appellants to pay the whole claim, refusing them a resort to the land, and thus, in effect, putting the purchasers of the land out of court. If this was wrong, that does not affect the finality of the decree. The mode of correction was an appeal. But the decrée did not stop there : it provided, that if the *217 decree should prove unavailing, in whole or in part, either against Philip or John Thornton, liberty was reserved to the plaintiff to apply to the court for a further decree against either of those defendants; and ordered the cause to be retained in court for the purpose of taking further accounts as to the annuities that might in future accrue to the plaintiff. It surely cannot be contended, that the reservation of liberty to the plaintiff, affects, in the least, the character of the decree : it was a provision for the benefit of the plaintiff, looking solely to the execution of the decree, and rendering it effectual. Did the retaining of the cause in court, for the purpose indicated, render the whole decree interlocutory ? Unquestionably not, if we look to the meaning of the court. The cause was not retained to enable any of the parties to look back, or touch what had been done, but merely to enable the plaintiff to get decrees for her annuity as it should fall due. I presume there never was a decree for a running annuity, which did not in some form of words (and the form matters not) reserve to the annuitant this liberty. It answers to the scire facias, which issued, after judgement in the old writ of annuity, as new sums grew due. And if retaining the cause for this purpose, prevents the decree from being final, it follows (as was forcibly urged by counsel) that there never can be a final decree in a case like that before the court; for, during her whole life, she will be applying from year to year, and at her death, the whole matter, annuity and all, is at an end. A conclusion so monstrous as this can never be fairly attributed to the law.
I conclude that this was a final decree, and not having been appealed from within three years, cannot now be touched by this court. The appeal should be dismissed, as improvidently allowed.
Taking this view of the case, it is not material to decide whether, on the merits, the decree be right or wrong ? I will say, however, that my impression is, that the chancellor was correct in subjecting first the personal estate, and consequently the estate of the surety in the executorial bond.