Moncure, J.
The first question to be disposed of in this case is one of jurisdiction, which was raised in the argument before this court. It was not raised by any of the defendants in the court below by plea, answer, or otherwise, so far as the record shows; but on the contrary, the answers of the principal defendants, in effect, admitted the jurisdiction of the court. The only notice which seems to have been taken of the subject in that court is contained in the decree 'of the 22d day of February, 1853, in which an opinion is expressed by the court that it had jurisdiction of the case, upon the principles declared by the court of Appeals in the case of Ruffners v. Lewis’ ex’rs, 7 Leigh 720. H the defendants, Joseph and Thomas K. Friend, are bound to account with the plaintiff and their other co-tenants in common for rents and profits of the common property, while it was solely occupied and enjoyed by the Friends, *42 as claimed by the bill, then, undoubtedly, a court of equity has jurisdiction of the case. It involves the settlement of an account of rents and profits in which, according to that supposition, the plaintiff and defendants have a common interest in different proportions, and some of the parties concerned are infants. I will, therefore proceed to consider the case upon its merits.
The appellees, the Friends, by their counsel, contend that they are not bound to account at all for such rents • and profits to their co-tenants in common, at least to such of them as were adults when the property was occupied and enjoyed as aforesaid; and that, therefore, the bill ought to have been dismissed. They insist that, as tenants in common, they had a right to occupy and use any part, or all of the common property, without being accountable, in any form or to any extent, to their co-tenants, unless they contracted with them for such accountability, or ousted or excluded them from the possession, or unless they destroyed or ivasted the common property; none of which they say, did they do.
This would certainly have been the case at common law. “If one joint-tenant, or tenant in common of land,” says Colee, “ malceth his companion his bailiff of his part, he shall have an action of account against him, as hath been said. But, although one tenant in common, or joint tenant, without being made bailiff take the whole profits, no action of account lieth against him: for in an action of accoimt, he must charge him either as a guar- • dian, bailiff, or receiver, as hath been said before; which he cannot do in this case, unless his companion constitute him his bailiff. And, therefore, all those books which affirm that an action of account lieth by one tenant in common or joint-tenant against another, must be intended, when the one maketh the other his bailiff, for otherwise, never his bailiff to render an account, is a good plea.” 1 Tho. Co. 787 marg. And in *43 a note bv the editor, it is said: “At common law joint- " ’ J tenants and tenants in common had no remedy against each other, where one alone received the whole profits of the estate, since he could not be charged as bailiff or receiver to his companion, unless he actually made 1dm so.” Id. 788, note (R.)
But the statute 4 Anne c. 16, § 27, was passed in England to remedy this defect of the common law. And a similar statute was passed in this country at an early period, and has ever since continued in- force. In the Code, p. 586, ch. 145, § 14, it. is in these words: “ An action of account may be maintained against the personal representative of any guardian, bailiff, or receiver, and also by one joint-tenaiit or tenant in common, or his personal representative, against the other as bailiff, for receiving more than comes to his just share or proportion, and against the personal representative of any such joint-tenant or tenant in common.”
But it is contended that this statute makés a joint-tenant or tenant in common liable to account to his co-tenants only where he receives money, or something else given or paid by another, which all the tenants are entitled to in proportion to their interests as such, of which one receives more than his just share, according to that proportion; and not where he merely has the sole occupation and enjoyment of the property, even though, by the employment of his own industry, skill and capital, he makes a profit by such occupation and enjoyment, and takes the whole profit to his own use: and that, therefore, the Friends, not having received any rent from others for which they are accountable, but having only occupied and enjoyed the property as aforesaid, are not liable to account to their co-tenants for any profits which may have been made by such occupation and enjoyment, nor for any rent or other compensation whatever.
*44 , In support of this position a very important ease, decided in 1851 in the Exchequer chamber, Henderson v. Eason, 17 Ad. and El. N. S. 701, 79 Eng. C. L. R., is cited and much relied on by the counsel of the Friends; and it must be admitted that it fully sustains their position, and, if it were a binding authority, might be conclusive of this case. The question came fairly up for decision in that case. It was an action of account founded on the stat. 4 Anne c. 16, by Robert Eason against the executor of his co-tenant in common, Edward Eason. The pleadings were in proper form. On the trial of the issues, evidence was given that the two Easons were tenants in common of a. farm .from November, 1833, to November, 1838, during which time Edward Eason occupied the whole on his own account; that he cultivated the same on his own account solely, and appropriated the produce to his own use; that he cropped the farm in the usual way, kept the usual quantity of live and dead stock, and farmed well; and that he received all the produce of the farm, and sold it on his own account. Yerdict was found for the plaintiff, and upon an account thereafter taken the sum of £900 was- found to be due to him, for which judgment was accordingly rendered. The case was brought by error from the Queen’s Bench to the Exchequer chamber, where it was fully and ably argued. Parke B., in delivering the judgment of the court lays great stress on the word “ receiving ” in the statute. “ Every case,” he says, “ in which a tenant in common receives more than his share is within the' statute; and account will lie when he does receive, but not otherwise.” “ He is to account when he receives, not ta7c.es, more than comes to his just share.” What, then, is a “receiving” of more than comes to his just share, within the meaning of that provision of the statute of Anne? It appears to us that, construeing the act according to the ordinary meaning of the words, *45 this provision of the statute was meant to apply only to cases where the tenant in common receives money or something else, where another person gives or pays it, which the co-tenants are entitled to simply by reason of their being tenants in common, and in proportion to their interests as such, and of which one receives and keeps more than his just share according to that proportion. The statute therefore includes all eases in which one of two tenants in eoinmon of lands leased at a rent payable to both, or of a rent 'charge, or any money payment or payment in kind, due to them from another person, receives the whole or more than his proportionate share according to his interest in the subject of the tenancy. There is no difficulty in ascertaining the share of each, and determining when one has received more than his just share; and he becomes, as to that excess, the bailiff of the other, and must account. But when we seek to extend the operation of the statute beyond the ordinary meaning of- its words, and to apply it to eases in which one has enjoyed more of the benefit of the subject, or made more by its occupation, than the other, we have insuperable difficulties to encounter.” The learned Judge proceeds to enumerate these difficulties, and concludes by reversing the judgment of the Queen’s Bench. See 3 Bob. Prac. 173 (new ed.), where this ease is fully stated, and other eases on the subject are referred to.
This decision certainly settles the construction of the statute in England. But it is somewhat remarkable that its construction had not there been settled long before. . And it would seem that until that decision was made the current, or at least the preponderance, of judicial opinion in that country was the other way. That was the opinion of Vice Chancellor Wigram in McMahon v. Burchell, 3 Hare 97, 25 Eng. Ch. R. decided in 1843; though afterwards reversed by Lord Chancellor *46 Cottenham, 2 Phill. 127,22 Eng. Ch. R., upon the ground that mere occupation by one of several tenants in common of an estate, if unaccompanied by exclusion, does not make him liable for rent to his co-tenants, and that . . . the nature of the occupation in that case did not amount to such exclusion. That was the opinion also of Vice Chancellor Shadwell in Hendersons. Eason, 15 Simons 303, 38 Eng. Ch. R., decided in 1846; though Lord Cottenham doubted, on appeal, whether the claim allowed by the Y. C. could be maintained, and directed an action to be brought. 2 Phill. 22 Eng. Ch. R. 308. And that was also the opinion of the Court of Queen’s Bench in Eason v. Henderson, 12 Ad. & El. N. S., 64 Eng. C. L. R. 986, decided in 1848, on a case stated for the opinion of the court by order of a judge after issue joined in an action brought by direction of the Lord Chancellor as aforesaid. Lord Denman C. J. in delivering the opinion of the court, said: “The case stated that he (the defendant) had occupied and received the. whole profits, but no part was underlet; he received no rent, nor anything but the profits derived from the culture of the,lands, to the expense of which the plaintiff in no way contributed. It was contended that the defendant was not liable as bailiff, because it appeared that he had not received rent, and because it did not appear that he had received more than his just proportion.— But we think that the words, ‘ rents, issues and profits,’ include the proceeds, of the land, whether in money or in kind; &c.” The Lord Chancellor, it appears, being dissatisfied with that proceeding for some cause, directed another action to be brought; which was accordingly brought, and was finally decided in the court of Exchequer Chamber as before mentioned.
If the decision of that court, instead of being made in 1851, had been made before the statute of 4 Anne C. 16, S. 27 was adopted by us, the construction which that *47 decision settles in . England, would have been adopted by implication along with the statute. But as at the time of the adoption of the statute by us there had been no English decision construing it, we are left free to construe it according to its apparent meaning and the probable intention of the legislature,'without being controlled by subsequent decisions in England or elsewhere, other than in our own State. Though certainly we will always pay due respect to decisions out of our State, and none are entitled to more respect than those of the English courts, and especially the court of Exchequer Chamber.
What then is the moaning of the words in our statute, “for receiving more than comes to his just share or proportion”? What did the legislature intend by the use of those words? Did they only intend to make a tenant in common accountable to his co-tenants for receiving from a stranger on account of rents and profits of the property more than the just share or proportion of such tenant? Or did they intend to make him accountable for receiving more than his just share or proportion of the rents and profits, whether paid by a stranger or derived from his own occupation and enjoyment of the property? I think they intended the latter. The former construction may be a reasonable one in England, where the ordinary mode of deriving profit from real estate is by renting it out; but not in this State, where real estate is generally occupied and used by the owner. With all deference to the court of Exchequer Chamber, I think the construction they put upon the word “ receiving” is too technical and narrow, at least for our country; and if it be a just one in England, it is because of circumstances existing there which do not exist here. I do not see the force of the distinction drawn by that court between the words “receive” and “take” in this connection. I think the word “receiving” in the stat *48 ute literally means a receiving of profits as well by use and occupation as by renting out the property. At all events there is, in substance, no difference between them, and the former is as much within the reason and the meaning of the law as the latter. If a tenant in common rent out the property and receive more than his j ust share of the rent, he is accountable- for the excess to his-co-tenants. Why should he not be alike accountable when, instead of renting out the property, he solely occupies and uses it, and thus receives more than his just share of the profits? Why should he be told: “If you rent out the property and receive the rent, you must share it out with your co-tenants. But if you solely occupy and use it and take all the profits, you will not he accountable to them ?” Would he hesitate between these ■ alternatives ?
I think tlie same principle precisely applies to the two cases. And the only difficulty which exists is, in the application of the principle to one of the cases. That difficulty ivas much commented on by the court in tlie case decided by the Exchequer Chamber; and was one of the causes, if not the chief cause, of that decision.—In the case of rent received from a stranger, “there is no difficulty” the court said “in ascertaining the share of each and determining when one has received more than his just share.”' But in the case in which one has enjoyed more of the benefit of the subject, or made more by its occupation than tlie other, ‘“we have insuperable difficulties to encounter.” The court then proceeded to enumerate the difficulties.
I readily admit the existence of difficulty, but not thait it is insuperable; certainly not in all cases. It consists in the fact, that the occupying tenant has rights as well as his co-tenants, which two classes of rights must, if possible, be reconciled. The statute was not designed to take away or impair the rights of the occupying ten *49 ant, but to require them to be so used as not to interfere with those of his co-tenants. Each tenant has a right to occupy and use the common property, but not to the exclusion of his co-tenants. The occupation of one, does not necessarily exclude 'the occupation of the others.— They cannot, by remaining out, make the occupying tenant their bailiff against his will. lie can be made their bailiff only by contract with them; or, under the statute, by receiving more than comes to his just share or proportion. It is often difficult to determine, when, by mere occupation and use of the property, he receives more than his just share. And it is still more difficult to lay down any general rule on the subject. This rule at least may be laid down, that whenever the nature of the property is such as not to admit of its use and occupation by several, and it is used and occupied by one only of the tenants in common, or wherever the property, though capable of use and occupation by several, is yet so used and occupied by one as in effect to exclude the others, he receives more than comes to his just share or proportion, in the meaning of the statute, and is accountable to the others.
This rule is of easy application to this case, and is I think sufficient for its solution. The salt property, of which the rents and profits are the subject of controversy here, if capable of use and occupation by several, which is at least extremely doubtful, has certainly been so used and occupied by the Friends as in effect to exclude their co-tenants therefrom. The Friends have solely occupied and used it and derived all the benefit which they could have derived from it had they been the sole owners. And they so occupied and used it as plainly to indicate that they considered themselves, and must have been considered by the other parties concerned, as renters of the property and not as tenants in common merely. They actually held the dower interest *50 of Mrs. Cabell, being one undivided third of the property, and the interest of Mrs. Early, being one undivided fourth of the other two-thirds, under a lease for ten years, dated the 19th day of December, 1835, at a certain annual rent for each interest. These interests, with others which they owned, made them proprietors of almost the entire subject. After the determination of the lease they continued to occupy and use the property as before. Indeed, they never, until recently, denied their accountability to their co-tenants in some form or to some extent, for a participation in the rents and profits, but seem to have admitted their liability to Early and wife, or her trustee, for the same annual rent of her interest after she became of age as before, on the ground that they continued to hold that interest under an implied contract, on the terms prescribed by the.expired lease; and to the proprietors of the other outstanding interests, for the yearly value thereof in the condition in which the property was when it came into the hands of the Eriends. They only denied the light of their co-tenants to participate in issues and profits which may have arisen alone from their labor, skill and capital in the use of the property, without being accountable for the losses of the operation.
The construction of the statute for which I contend is, I think, the same which has always been acted upon in this State. It was acted upon without question in the only ease on this subject decided by this court; I mean Ruffners v. Lewis' ex'rs, 1 Leigh 120; which was argued by counsel of great experience and ability. The question in that case was, not whether the defendants were liable at all, but on what principle and to what extent. Carr, J., said: “ The Ruffners must be treated as tenants in common with Prior, not as trespassers. They are liable for a fair share of the profits, and entitled to full compensation for their expenses fairly and *51 reasonably incurred, as well those attending their abortive efforts to find water, as their more fortunate ones.” The opinion of Tucker, P., was to the same effect, and the other judges concurred therein.
The same construction has also been adopted and well established in South Carolina. In Thompson v. Bostick, 1 McMullan’s Equ. R, 75, before Chancellor Harper in 1830, the defendants, who were tenants in common with the plaintiffs of a tract of land, had taken possession of it and cultivated all the cleared land. They also cleared and cultivated another portion of the land, and made improvements; and the question was, whether and to what extent they were chargeable ? “ I am of opinion,” said the chancellor, “that defendants ought to be charged with the rent of land'estimated as it was when they took possession of it, and are not to be charged with the rent of the newly cleared land, or credited for improvements. There is nothing, I think, in the objection, that the defendants did not receive rent, but cultivated the lands themselves. To cultivate and have the use of lands, is to receive the rents and profits, though the occupier is his own tenant.” This decision, (at least as to the rents and profits of the cleared land, the other part of the decree not having been appealed from,) was afterwards affirmed on appeal. In Holt, &c., v. Robertson. Id. 475, before chancellor Desaussure, in 1831, and afterwards in the court of Appeals, the decision was to the same effect. And so also was it in Hancock, &c., v. Day, Id. 69, decided by the Court of Appeals in 1840.
The case of Sargent v. Parsons, 12 Mass R. 149, decided in 1815, was cited and much relied on as being to the same effect with the decision of the Exchequer Chamber before referred to. Eut the action in that case was a common law action , of account, and not an action upon the statute 4 Anne e. 16; and most of the remarks of Parker C. J., refer to the common law, and not the *52 statute. The property in that case consisted of houses, lands and wharves, and though they were for a period in the sole possession and occupancy of the defendants, it does noj; appear that their occupation of the property was of such a nature as to exclude their co-tenants therefrom. In a note to that ease, it is stated, “ that it does not seem to be necessary that the defendant should have received profits otherwise than by his occupancy, in order to give a cause of action to the plaintiff upon the statute. It is sufficient if he have any way received more of the issues or profits than comes to his just share and proportion;” for which is cited Dane’s Ab. ch. 8, art 3, §13.
I, therefore, think the Friends are accountable for rents and profits to their co-tenants in common, and the question next to be considered is, in what manner and to what extent are they so accountable ? Are they accountable for issues and profits actually made by the application of their labor, skill, and capital, to the property; or are they accountable for the fair yearly value of the property in the condition in which it was at the time it came to their possession %
I think the latter is the just and true measure of accountability, and one that is perfectly consistent with the statute. There is a very material difference between the nature of a liability of a bailiff at common law, and of a tenant in common who is a bailiff under the statute. The former is a fiduciary, bound to manage the estate to the best advantage and make all the profit he can for the owners, and to keep and render to them a full and fair account of his transactions; and he is liable, not only for rents and profits actually received, but also for such as might have been received without his default: while the latter is accountable only for rents and profits actually received, more than his just share and proportion. He is bailiff only by virtue of his receiving *53 more than his just share, and in an action of account against him, it is an essential averment of the declaration that he has received more than his share. Wheeler v. Horne, Willes, P. 208; Sturton v. Richardson, 13 Mees and Welsb. 17; 79 Eng. C. L. R. 718. He is not a fiduciary nor a trespasser, but has a right to occupy and use the property. When he rents it out and receives the rent there is no difficulty in ascertaining the amount for which he is accountable. When, instead of renting it out, he occupies and uses the whole to the exclusion of his co-tenants, and thus, in effect, becomes himself the renter, there is more difficulty; but it seems to me that the just and true rule is, to charge him with a reasonable rent for the use and occupation of the property in the condition in which it was when he received it, and to hold him accountable to his co-tenants for their just shares of such rent. This rule does justice to all parties concerned, and gives the same just measure of compensation to the co-tenants whether the property be rented out by one of them, or be occupied and used by him to the exclusion of the rest. • It does not make the compensation in the latter case depend Upon the accident of his being a good or a bad manager, a prudent and cautious person, or a wild and reckless speculator.— It is just to the occupying tenant, who having occupied and used the property instead of renting it out, ought to be accountable to the same extent as if he had rented it out and received the rent. It is just to his co-tenants, who are entitled to a share of the rent of the property, but not of the issues and profits of his labour, skill and capital applied to its use. They do not share in the risk and ought not to share in the profit of the operation.
The rule is not inconsistent with any authority that I have seen. In Ruffners v. Lewis’s ex'ors, supra, an account was taken of rents, profits, &c., but no question was raised in that case as to the correct mode of adjust *54 ment, and the one adopted may have been more favorable to the occupying tenant, than to have charged him with a rent; especially as he was allowed by the express terms of the decree, not only for permanent improvements, and for his expenses and actual services in his successful operations, but also for his expenses, labor and services in the course of his unsuccessful experiments. In Thompson v. Bostick, supra, the rule in question was adopted. “ If the whole estate,” said Chancellor Harper, “were let to tenants, and certain rents reserved, as is commonly the case in England, there would be little difficulty. But what rule shall be adopted when one tenant in common has occupied part of the premises himself ? I know of no other than to estimate the rent of the whole premises, and then to value the rent of that portion of the premises occupied by the tenant in possession, with reference to the condition they were in at the time he took possession.” 1 McMullen’s Equ. R. 77.
There may be peculiar circumstances in a case making it proper to resort to an account of issues, profits, &c., as a mode of adjustment between the tenants in common; and that was perhaps the case in Ruffners v. Lewies ex’ors; but such cases would merely be exceptions to the rule I have laid down, which, I think, is properly applicable to most, if not all cases.
It applies, I think, with peculiar propriety to this case; in which the occupying tenants, the Friends, had themselves a large interest in' the subject as tenants in common, and were lessees (or one of them at least a lessee) of other large interests therein of other tenants in common, and embarked and were- for many years engaged in a most hazárdous operation upon the property, requiring,' for its successful result, the expenditure of a vast amount of labor and of capital, and the exercise of the greatest skill and prudence. During all this period the *55 proprietors of the outstanding interests stood aloof, and did not offer to join in the adventure, to contribute to the means of its prosecution, to run the risk of its failure, and take the chance of its successful issue. They cannot now come forward and say, the operation has been successful and they, are entitled to a share of the profits. The most they are entitled to is their share of a reasonable rent. The Friends are accountable for that. Being themselves proprietors of some, and lessees of other, interests in the subject, and occupying and using the whole of it, it is just and right, and what they must have expected and intended, that they should pay a reasonable rent for the outstanding interests. But upon no principle of justice are they bound, to account for issues and profits. Nor could such an account now be settled So as even to approach a correct result. It is no easy matter to keep an account of transactions so extensive, and running through so long a séries of years, and be prepared with proper vouchers for a settlement— and the Friends were under no obligation to do so. Then they are accountable only for a reasonable rent, and the next question is, How is the amount of such rent to be ascertained %
In regard to the appellants, I think there can be no difficulty. Mrs. Early’s interest of one-fourth of two-thirds of the property, was leased by her guardian to Thomas B. Friend, at an annual rent of three hundred dollars, for a term of ten years, subject to be determined, after her arrival at age or marriage, at the election of her or her husband. She arrived at age in 1843, ánd married in 1846, but, as it is averred in the answer of Joseph Friend and not disproved nor denied, neither she nor her husband has “ever expressed any wish to ehange the terms of respondent, holding under the lease aforesaid, and hence he has always hitherto regarded himself as holding and occupying under the original *56 rent reserved.” The lease commenced December 25, 1836, and of course expired, if not determined before by election as aforesaid, December 25,1846. There was no such election to determine it before, and therefore, by its terms, it continued in force until the last mentioned. day. And Joseph Friend having after that day continued to hold and use the property as before, without any objection on the part of Early and wife or her trustee, he might be considered holding, on the terms of the previous lease; according to the authorities cited by his counsel, to wit: 2 Rob. Prac. 378-9 (newed); Hyatt v. Griffiths, 79 Eng. C. L. R. 505; Humphreys v. Franks, 36 Eng. L. & E. 429. In McKay v. Mumford, 10 Wend. R. 351, it was held that the presumption of law, that a tenant who holds over after the expiration of his lease continues to hold under the landlord and on the' terms of the lease, does not apply to a tenant in common who leases the undivided interest of his co-tenant. “The fact of his not leaving possession,” said the court, “does not authorize the inference that he still intends to hold under the lease; on the contrary the presumption is, that he holds under his own title, which gives him a right to the possession and enjoyment of the whole estate, liable however to account to his co-tenants at law, 1 R. S. 90, or in equity 8 Cow. R. 304. This presumption of possession by virtue of his own title may undoubtedly be rebutted, and then he would hold, as to the moiety of his. co-tenant, as any other tenant and subject to the same rules of law.” If there be any such presumption it is rebutted in this case by the express admission of Joseph Friend that after the expiration of the lease “he always regarded himself as holding and occupying under the original rent reserved.” I therefore think that the rent for the interest of Mrs. Early during the whole period of the use and occupation of the property by the Friends ought to be at the rate paid by the lease.
*57 In regard to the proprietors of the other outstanding interests, there may he more difficulty. But I think it ought to he presumed, as to them, that the rent agreed to he paid to Mrs. Early, that is three hundred dollars, was a fair and reasonable rent for her interest of one-fourth of two-thirds; which would make the annual rent of the whole property, while in the use and occupation of the Friends, eighteen hundred dollars; and that they ought to be charged with rent at that rate, unless it be proved that a reasonable rent would be more; in which case they ought to be charged with such reasonable rent. I think the Friends ought to pay at least the same rate of rent for the other outstanding interests as for that of Mrs. Early. They derived the same benefit, in proportion, from those interests as from hers; and the fact that they made no contract for the use of the former, is certainly no reason for paying less rent for them than for the latter. They must have expected and intended to pay the same rate of rent to all the other parties interested in the property with themselves as they agreed to pay fpr the interest of Mrs. Early, except the dower interest for which an annual rent of five hundred dollars was agreed to be paid.— Why less rent in proportion was agreed to be paid for the dower interest than for that of Mrs. Early, does not appear. It may have been because the former interest was determinable at any time by the death of the dowress, while the latter was more permanent. At all events I tlfink the agreed rent of the latter is a fairer criterion than that of the former for the ascertainment of the amount of rent to be paid for the other outstanding interests. I think the proprietors of those interests having made no contract with the Friends or either of them, ought to have the liberty of showing if they can, especially as most of them were infants during the use and occupation of the property by the Friends, that it was *58 reasonably worth more rent in proportion' than what was agreed to be paid for the interest of Mrs. Early.
The Friends being accountable to their co-tenants for a reasonable rent of the property, and not for the issues and profits of their operations thereon, ought to pay interest on the rent of each year from the end of such year until payment.
Upon the whole I think that so much of the decrees of the Circuit court as is in conflict with the foregoing opinion is erroneous and ought to be reversed, with costs to the appellees, the Friends, as the parties substantially prevailing, and the cause remanded to the Circuit court, to be proceeded in to a final decree according to the principles above declared.
The other judges concurred in the opinion of' Mow- ■ cube J.
Decrees reversed- in favor of the cuppellees.