Bouldin, J.
delivered the opinion of the court.
The decrees complained of in the petition for appeal were rendered, one of them on the 23d day of July *772 18 68, and the other on the 28th of January 1869. A subsequent decree finally disposing of the cause and dismissing the bill was rendered on the 12th day of June 1869. The appeal was not allowed until the 26th day 0f October 1871; but it is conceded by the parties, by counsel, as a fact in the cause to be considered by the court, that the petition was presented to one of the judges of this court at Staunton during the August term of the court, 1871, which commenced August 10th and closed September 20th, 1871.-
On this state of facts it has been earnestly and ably contended by the counsel for the appellee that the petition was not presented within the time prescribed by law, and that the appeal should, therefore, be dismissed as improvidently awarded.
Under the statutes existing when these decrees were rendered, and still in force, no appeal can be allowed from any final judgment or decree, unless the petition shall be presented within two years after the date of the decree or judgment; and it is obvious that more than that time elapsed between the date of the latest of the three decrees and the presentation of the petition for an appeal. It does not appear from the concession of the parties on what day of August term 1871, the petition was presented, but as it was presented at Staunton during that term, it could not have been earlier than the 10th day of August 1871, being the 1st day of the term. Assuming that to be the true date, it was two years and fifty-nine days after the last decree, two years six months and thirteen days after the decree of January 28th, 1869, and three years and eighteen days after the decree of July 23d, 1868.
But by the act of the 5th of November 1870, Session Acts 1869-70, chapter 399, pp. 553-4, passed within two years from the dates of the decrees of January and June 1869, and amending the law limiting appeals to two years, it is enacted “that the time from the 26th day of *773 January eighteen hundred and seventy, to the passage of this act, shall be excluded from, the computation of said period of two years.” The time thus required to be deducted amounts to nine months and ten days, and when the deduction is made in this case, the time between the dates of the decrees of January and June 1869, and the presentation of the petition, will be less than two years; and the case would be the same were the last instead of the first day of Staunton term assumed as the day on which the petition was presented.
The appeal, then, from those decrees was taken in due time, notwithstanding the court should be of opinion that the decree of July 1868, is a final decree and no longer subject to appeal.
At the next term after that decree was rendered the appellants presented to the court their bill of review, duly supported by affidavit, seeking to have the decree reviewed and reversed, and asked leave to file the same; but the court, by decree of January 28th, 1869, refused to allow the bill of review tó be filed, decreed adversely thereto, and re-affirmed the decree of July 1868; and not only from the decree of July 1868, but from this decree of January 1869, the appeal to this court was allowed. This appeal from the last decree is, as wre have seen, in time, and, of necessity, it presents for our consideration the propriety of the decree of July 1868, sought to be reviewed. If that decree was final and ■erroneous on its face, the bill of review should have been allowed and the decree reversed. If the decree was interlocutory merely, and erroneous, then the bill of review should have been treated by the court as a petition for a rehearing, and the decree should have been reheard and reversed; and in either event, the refusal of the court below to entertain the application was a proper subject of appeal to this court; and as we have already said, the appeal is in time. See 2 Rob. old practice, p. 418, citing the cases of Lees v. Braxton, 5 *774 Call, 459, and Williamson v. Ledbetter, 2 Munf. 521. But as the result of a reversal of the decree of January were that decree alone to be considered by this-court, would probably be to send the case back to the oircuit court, with instructions either to allow the bill of review to be filed, or to rehear the cause, as the case-may be, and would thus be attended with additional expense and delay: it is proper to consider and decide the-question so ably and elaborately argued at the bar, viz: whether the decree of July 1868, is final or interlocutory.. If that decree is not final, but interlocutory merely, then it is properly before us on the appeal in this case, notwithstanding more than two years have elapsed from its rendition.
The court is of opinion, that the decree of July 1868, was not a final decree, but was merely interlocutory.
The distinction between final and interlocutory decrees has been a subject of frequent discussion before this tribunal, and is now well established by the decisions of the court.
In Cocke's adm'r v. Gilpin, 1 Rob. R. 20, 46, Judge Cabell, adopting the language of Judge Carr iu Harvey & wife v. Branson, 1 Leigh, 108, said:. “When a decree makes an end of a case, and decides the whole matter in controversy, costs and all, leaving nothing further for the court to do, it is certainly a final decree.” And in the same case, p. 27-8, Judge Baldwin said: “Where the further action of the court in the cause is necessary to give completely the relief contemplated by the court, then the decree is to be regarded not as final but as-interlocutory.”
Here we have very briefly and clearly presented the-characteristic features of a final and an interlocutory decree ; and the definitions thus given have been approved and adopted by this court in the subsequent case of Fleming & als. v. Bolling & als., 8 Gratt. 292, Moncure, J. delivering the opinion of the court.
*775 Let us apply the test to the decree of July 1868.
The suit was for the specific performance of a contract in writing, signed and sealed by the parties, for the sale and purchase of land ; and performance was resisted mainly on the ground of inadequacy and failure of consideration; the consideration being Confederate States treasury notes. The decree merely set forth, that in the opinion of the court, upon the principles of a court of equity, the contract ought not to be enforced; but it did not dismiss the bill. On the contrary, it goes on to declare, that the only relief to which the plaintiffs were entitled, was to have the value of the Confederate States treasury notes paid by their ancestor for the land, repaid to bis personal representative ; and that upon his being made a party the court loould proceed to ascertain through one of its commissioners, the value of said notes at the date of payment, and would decree accordingly ; but should the plaintiffs elect to proceed at law, the bill would be dismissed without costs to either party. And the cause teas continued to the next term to give the plaintiffs a reasonable time to make their election. This is the substance of the decree; and it certainly cannot be said of it, that it "makes an end of the case, and decides the whole matter in controversy, costs and all, leaving nothing further for the court to do;” that no "further action of the court in the cause is necessary to give completely the relief contemplated by the court.” On the contrary, the court after settling certain principles as applicable to the case, sedulously avoids rendering a decree in favor of either party, but indicates a form of relief to which the plaintiffs were entitled in the cause; and continues it with a pledge on the face of the decree, that the relief thus indicated would be ascertained by the court and granted, if elected by the plaintiffs.
Such a decree is plainly interlocutory ; and the appeal allowed in the cause, brings properly before this court the entire record.
*776 This brings us to the merits of the case ; about which, we think there can be no doubt.
Each party was sui juris, and no advantage was taken on either side. The land was sold for a sum in Confederate States treasury notes, demanded for it by the vendor, and deemed at the time hy both parties its fair equivalent. The entire amount of the purchase money was paid in cash to the vendor, and received by him as a sufficient consideration—instructions were given to a person who was present for the purpose, to prepare a deed—officers were in attendance to take and certify the proper acknowledgments—the writing of the deed was commenced, and its completion was only prevented by the absence of certain papers, which were necessary to ascertain the boundaries of the land. The vendor seems to have caused a deed for the land to be prepared by his counsel; and always until, and in fact for sometime after, the fall of the Confederacy, expressed his willingness to execute it; but in some way its execution was delayed. .
There was no evidence introduced in the cause showing, or even tending to show, that the price paid for the land was not at the time of payment its full value in Confederate States treasury notes ; nor was there any evidence showing that one dollar of the money received perished in the vendor’s hands. On the contrary, the vendor said that he would be able to make a satisfactory use of the money.
The ground on which the Circuit court refused to enforce specific performance of the contract, evidently was not that the consideration was inadequate at the date of the contract, nor that there was fraud in the sale, nor undue advantage taken of the vendor ; but, that in the state of the law w'hen the cause was heard in the Circuit court, a court of equity could not regard Confederate States treasury notes as a valid consideration. Whatever room there may have been for discussion on that *777 subject at an early period after tbe close of the war, it Í3 no longer a doubtful or open question. All doubt about it has been removed by repeated decisions as well of the United States Supreme court as of the courts of the several States. Among them will be found a recent decision of this court directly on the point, and in a case in all respects analagous. Hale v. Wilkinson, 21 Gratt. 75.
That was a suit for the specific performance of a contract made during the war for the sale of land for Confederate States treasury notes, and the contract was specifically enforced. Judge Moncure, speaking for the court, says, that in determining the question of the right to specific performance, “we must carry ourselves back to the date of the contract, and the time when the purchase money was paid. If at that time the consideration would have been deemed adequate; if the court would then have decreed a specific execution of the contract, had this suit been then brought, it follows, I think, necessarily, that the consideration must now be deemed adequate, and the court must now decree such execution.” P. 87. We approve aud re-affirm these principles ; and applying them to the facts of this case, we adopt the following language of the same learned judge: “ Can there be a doubt, that if this suit had been then brought (that is, when the contract was made, and the price demanded by the vendor for the land was fully paid in cash,) the consideration would have been then considered adequate, and the court would then have decreed specific execution? I think none whatever.” Ibid, p. 87.
The reasoning and conclusions of the court, throughout the entire opinion, are referred to as strikingly applicable to tbe case before us ; and the facts are in all material respects alike. If there be a difference in any respect, that difference is in favor of the enforcement of the contract in this case. In Hale v. Wilkerson, there *778 was, as to a portion of the purchase money, both delay ai)d depreciation before the payment thereof was completed ; whereas, in this case, there was compliance with the contract by the vendee to the letter, by the payment in cash of the entire price demanded by the vendor for the land. The vendor thus received in hand at the date of the contract, the full consideration demanded by him for the land, leaving nothing more to be done by the vendee, who was not for one mo'ment in default.
Under such circumstances, there cannot be a doubt that the vendee was ihen, and that his heirs are now, entitled to a specific performance of the contract. The court is, therefore, of opinion, that the decree of July 1868, refusing to enforce the contract, and the subsequent decrees of January and June 1869, are erroneous, and should be reversed with costs to the appellants ; and that a decree should be entered, requiring the appellee to convey the land in the contract mentioned to the appellants, with general warranty.
The decree was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that the appellants are entitled to a specific performance of the contract in their bill mentioned, and that the decrees of the 23d day of July 1868 and of the 28th of January and 12th of June 1869 are erroneous.
It is therefore ordered and decreed that said decrees be reversed and annulled, and that the appellee, George W. Keller, do pay to the appellants their costs by them expended about the prosecution of their appeal aforesaid here. And this court proceeding to render such decree as should have been rendered by the said Circuit court, doth order and decree that the said George W. Keller do convey to the plaintiffs, in said Circuit court, children and heirs at law of saidMWilliam Ambrouse, deceased, the tract of land described in the contract of the 29th of *779 January 1864, exhibited with the bill, with general warranty of title ; and that said George W. Keller do pay to the plaintiffs their costs by them about the prosecution of their suit in said Circuit court expended. And should the said George W. Keller fail to make said deed within sixty days from this date, the court doth further order and decree that John J, Williams, who is hereby appointed a special commissioner for that purpose, shall in the name and on behalf of said George W. Keller convey the said tract of land to said heirs at law of William Ambrouse with general warranty of title on the part of said Keller and at his costs ; and said commissioner shall then report his proceedings to the said Circuit court in order to a final decree. All which is ordered to be certified to the Circuit court of Frederick county.
Decree reversed.