Bouldin, J.,
delivered the opinion of the court.
This case comes before the court on a writ of error to a judgment of the corporation court of the city of Lynchburg, in a case of prohibition.
The case was briefly this: In September 1872, James Casey, C. J. Aikers, John Henry and James M. Casey, citizens of the city of Lynchburg, presented their petition to George H. Burch, as mayor of said city, jireferring charges of misconduct-in office and neglect of duty against William W. Ilardwicke, as chief of police of said city; and praying the said Burch, as mayor and chief executive officer of the city aforesaid, after due notice to said Hardwicke, to enquire into and investigate said charges; and if they should be established, that said Hardwicke should be’removed from office.
*53 The application was made under the 20th section of the 6tli article of the constitution of the State, a portion of which is as follows:
Sec. 20. There shall be chosen by the electors of every city a mayor, who shall he the chief executive officer thereof, and who shall see that the duties of the various city officers are faithfully performed. He shall have power to investigate their acts, have access to all books and documents in their offices, and may examine them and their subordinates on oath. The evidence given by persons so examined, shalL not be used against them in any criminal proceedings. He shall also have power to suspend or remove such officers, whether they be elected or appointed, for misconduct in office or neglect of duty, to be specified in the order of suspension or removal; but no such removal shall be made without reasonable notice to the officer complained of, and an opportunity afforded to be heard in his defence.”
These provisions of the State constitution constitute a portion of the laws for the government of the city, which the courts, the mayor, the officers of the city, and the citizens, are alike bound to respect. And acting, as he supposed, in obedience and conformity to, and under authority of these provisions, the mayor, as the chief executive officer of the city, seems to have given to the appellee, Hardwicke, notice, as required by law, that he should proceed to investigate the charges of misconduct preferred as aforesaid against him. Hardwicke appeared and denied the authority of the mayor to proceed with the investigation; but his objection was overruled; and the mayor avowed his purpose to proceed. Whereupon, Hardwicke presented his petition to the Judge of the corporation court, supported by affidavit, praying for a rule against the mayor and the citizens aforesaid, to show cause why a writ of prohibition should not issue *54 against tliem, restraining said mayor from taking jurisdiction to try said Hardwicke, and the citizens aforesaid prosecuting their charges before said Mayor.
The mayor answered the rule; setting forth the auunder which} as chief executive officer of the city, he deemed it his duty to investigate the charges against the’ chief of police, and if necessary to remove him.
The questions presented were purely matters of law; no question of fact being raised. On the 11th day of November, 1872, the court rendered the following judgment:
“ This day came again, as well the plaintiff as the defendant, George H. Burch, by their attorneys; and the defendants, James Casey, John Henry, C. J. Aikers and James M. Casey, who appear to have had legal notice of this motion—they were solemnly called, but came not ; whereupon, the plaintiff and the defendant, George H. Burch, being fully heard, it is considered by the court that the commonwealth’s writ be awarded the plaintiff, to prohibit the defendant, George H. Burch, mayor of the city of Lynchburg, from proceeding to try or remove from office the said plaintiff, William W. Hardwicke, as chief of police of the city of Lynchburg, and to absolutely suspend all further proceedings against said plaintiff, on the petition of the defendants, James Casey, John Henry, C. J. Aikers and James M. Casey; and that the defendant, George H. Burch, do pay to the plaintiff his costs by him in this behalf expended. And the said defendant in mercy, &c. &c.”
To this judgment Burch obtained a writ of error from this court; on which the case now comes before us.
A preliminary objection has been taken by the counsel for the defendant in error, and urged with great earnestness and ability, that the writ of error should be dis *55 missed., as improvidently awarded, because, as they contend, the judgment of the court below was interlocutory merely, and not final.
To sustain this position they have collected with much industry, the ancient common law authorities, showing, as the law aforetime was, that the award of the writ, in a contested case, was a preliminary proceeding; and from such preliminary proceeding, that no appeal would lie.
Were this conceded to be now law, it would only show that in making such preliminary order, the court should be careful not to make it final on its face, so as to put the case beyond the further control of the court; that it would be error in the court to make such order a final one; but it certainly does not show that the court, if it really intends to enter a final order, making an end of the ease, may not do so in any stage of the cause, however premature such action may be; nor does it show that such order is not final, because it is premature. This would be to make the finality of a judgment depend on its propriety; taraake- a judgment intended by the court to be final, and actually final in its terms, interlocutory, because erroneous; to confound what has in fact been done with what ought to have been done.
We think it cannot be seriously questioned, that a court may in fact enter a final judgment in any stage of the cause, however erroneous or premature it may be; and that when such judgment is so entered, it may be reviewed by the appellate tribunal, as a final judgment. How, then, do we ascertain when a judgment or decree is final ? That must always be ascertained, not by enquiring what ought to have been done by the court, but by inspecting the terms of the judgment or decree, and learning from its face what has been done. If it appears on the face of the judgment or decree, that “further *56 action in tlie cause is necessary to give completely tlie relief contemplated by tlie court, tlien the decree is to be regarded not as final, but interlocutory.” But “-when a decree makes an end of a case, and decides tlie whole matter in controversy, costs and all, leaving nothing further for the court to do, it is certainly a final decree.” These principles have been repeatedly announced by this court, in chancery causes, and have been very recently reaffirmed in tlie latest ease on the subject: Ambrouse's heirs v. Keller, 22 Gratt. 769. The same principle applies to judgments.
Applying these principles to the judgment before us, we think it impossible to reach any other conclusion than that it is in form, substance and intent a final judgment. It grants to the defendant all the relief prayed for, and all contemplated by the court, to wit: a peremptory writ of prohibition; it gives him his costs; and closes with the formal conclusion to final judgments, “and the defendant in mercy, ¿-c.” Thus deciding “tlie whole matter in controversy, costs and all, leaving no thing further for the court to do.”
If such a judgment ho not final, it is difficult to conceive the terms in which a final judgment should or could be rendered. It might, at common law, have been erroneous as premature; but would not on-that account be less final.
But, the common law proceeding in contested eases, was based on forms and fictions which have been long abolished, both in England and Virginia; and the proceeding now is very different and far more simple. See opinion of this court, delivered by Judge Moncure, in the cases of Mayo, mayor, &c., v. James, 12 Gratt. 17; and Supervisors of Culpeper v. Gorrell, &c., 20 Gratt. 484, and authorities cited.
The plaintiff, in prohibition at common law, in a seri *57 ously contested case did net pray in Iris declaration that a writ of prohibition, might be awarded himbut his complaint was based entirely on the fiction that such writ had already issued, and that the defendant, was in contempt for proceeding with his suit regardless of the writ; when, in point of fact, no such writ had ever issued; and the prayer of the declaration was, not that a writ of prohibition should issue, but for damages against the defendant, for disregarding the writ assumed as aforesaid to have been issued. See 1 Wm’s. Saunders, p. 136, &e., where the declaration is given in full. The fact thus assumed was not traversable; and the issuing pro forma of the writ, or the fiction that it had issued, being at common law the foundation of the proceeding, the original award of the writ, if in fact made, was regarded a preliminary order not to be apjioaled from.
But, by the provisions of chapter 155, Code of 1860, p. 658, taken from the Code of 1849, these cumbrous forms and useless fictions of the common law have been dispensed with; and the ultimate prayer, both of the petition and declaration, when one is necessary, (which is not always the case,) is, that a writ of prohibitiommay be awarded; and when the case shall have been fully heard, whether on petition and answer, or on declaration and formal pleadings, should the court be of opinion that the writ ought to go, it will be awarded, not as a preliminary or original writ, but as a writ of execution, with costs (and damages, if proper,) to the plaintiff; and the case is at an end—the judgment is final. And so, in like manner, should the defendant succeed, final judgment vdll be entered for him, with costs. See Supervisors of Culpeper v. Gorrell, and others above cited, where the entire proceeding, from the commencement to final judgment, was in this court. That case can in no material matter be distinguished from the casebefoi'e us; and *58 the judgments in each are in form and effect the same, and alike final. The principle established in that case is this: that a declaration, if deemed necessary by the court, or if demanded by the defendants, would, as a general rule, be required by the court below; but, that it is not in all cases necessary ; that if the case be as fully presented on the petition and answer, as it could be by declaration, a declaration would be a useless form, and may be dispensed with. It was dispensed with by this court in that case, although demanded by defendant. But no declaration having been demanded by defendant in this case, the question does not arise.
We are of opinion, therefore, that the judgment of the court below was final, and that the writ of error was not improvidently aivarded.
This brings us to the consideration of the errors assigned by the plaintiff’ in error. And in the view taken of the case by the court, it will only be necessary to consider the fourth error, which is as follows:
“4. Because the mayor of a city, in investigating the acts of a city officer, and suspending or removing him for misconduct in office, does not sit as a judicial tribunal, but simply as an executive officer administering the government of the city, in respect of which there is no remedy by writ of prohibition; this being a remedy which applies exclusively to courts.”
The court is of opinion that the objection is well taken.
The writ of prohibition is an ancient common law remedy, issuing from the superior courts of common law to the inferior courts, to restrain the latter from excess of jurisdiction. Its object was to keep within the limits and bounds of their several jurisdictions the various courts of the realm. See 8 Bacon’s Abr. title Prohibition, p. 206. The injury for which the common law pro *59 yided a remedy by the writ of prohibition, says Sir "William Blackstone, “is that of encroachment of jurisdiction, or calling one non coram judice, to answer in a court that has no legal cognizance of the cause.” And he goes on to say that the writ issues from the superior court, “ directed to the judge and parties of a suit in any inferior court, commanding them to cease from the prosecution thereof, upon a suggestion that either the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, but to the cognizance of some other court.” 3 Black. Com. p. 111-12. And this account of the object and functions of the writ has been appiwod by English jurists and elementary writers too numerous to mention.
The same restriction of the writ to judicial proceedings'—to courts alone—has been distinctly and repeatedly sanctioned by this court. In the ease of Mayo, mayor, &c. v. James, 12 Gratt. 23, Judge Moneure, speaking for the court, says of the writ of prohibition: “It is in effect a proceeding between courts—a superior and an inferior—• and is the means whereby the superior exercises its due superintendence over the inferior, and keeps it within the limits and bounds of the jurisdiction prescribed to it by law.” Again: In the ease of The Supervisors of Culpeper v. Gorrell & others, 20 Gratt. 484, 522, the court say: “ A prohibition is a proper remedy to restrain an inferior court from acting in a matter of which it has no jurisdiction, or from exceeding the bounds of its jurisdiction.”
It thus appears that both in England and in Virginia the writ of prohibition is a proceeding between courts alone. And furthermore: That such courts must bear the relation of superior and inferior; the superior having authority to exercise due superintendence over the inferior.”
*60 Eoav, it cannot with any propriety be said, in the first place, that the mayor of a city, constituted by law the chief executive officer thereof, and clothed with discretionary power to supervise the officers in his own department, to investigate their conduct, and to remove them from office, acts as a court, in the discharge of these executive functions. That would be to confound the functions of the judicial and executive departments. Ivor is the mayor, when acting as chief executive officer of the city, in any sense or to any degree the inferior of the corporation court, or any Aviso subject to its superintendence. They are distinct and co-ordinate departments of the corporate government; as much so as the executive and judicial departments of the state and federal govei’nments; and neither has the right to supervise and control the other in the discharge of their respective duties. In Marbury v. Madison, 1 Cranch’s R. 137, 170, Ch. J. Marshall, speaking of courts interfering with the discretionary powers of the executive, says: “It is scarcely necessary for the court to disclaim all pretensions to such a jurisdiction. An extravagance so absurd and excessive could not have been entertained for a moment. The province of the court is solely to decide on the rights of individuals; not to inquire how the executive or executive officers perform duties in which they have a discretion. Questions in their nature political, or which by the constitution aiid the laws are submitted to the executive, can never be made in this court.” The principle thus affirmed by Ch. J. Marshall, in Marbury v. Madison, has been reaffirmed in numerous later cases in the U. S. supreme court. See Gaines v. Thompson, 7 Wall, U. S. R. 347, and cases there cited.
Oir the conceded facts of this case the court is of opinion, that the plaintiff in error, whilst investigating the charges of misconduct in office and neglect of duty, *61 preferred against William W. Hardwiclce, as chief of police of the city of Lynchburg, was acting, not as a court, but as chief executive officer of tlio city, supervising the conduct of a person regarded by him an inferior officer in his own department; that the power of removal in such case is a discretionary power vested in him as chief executive officer of the city; and in that character, that he was not inferior to the corporation court; and was no wise subject to its superintendence or control; and, as a necessary consequence, that the writ of prohibition was improvidently and erroneously awarded.
The judgment of the corporation court must be reversed, with costs to the plaintiff in error, and a judgment entered in his favor, discharging the rule, and giving him his costs in the corporation court.
Other questions of much interest and importance have been pressed on the court, with great force of argument, by the counsel on both sides; but, as the case goes off on a question of jurisdiction, the court has not thought it necessary, or even proper, that these questions should be decided.
Anderson, J., did not concur in the opinion, on the preliminary question; blithe concurred on the merits.
Judgment reversed.