Staples, J.,
delivered the opinion of the court.
This court has decided in numerous cases that where no statutory enactment intervenes, the judgment creditor can acquire no better right to his debtor’s estate than the latter himself has. The creditor takes the property or applies it to the satisfaction of his lien in subordination, to all the equities which exist at the time in favor' of third persons, and a court of chancery will *801 limit tlie lien of the judgment to the actual interest the debtor has. The creditor is in no just sense treatedasa purchaser. He has no equity whatever beyond what justly belongs to the debtor. See Floyd v. Harding and Borst v. Nalle, reported in 28 Gratt. 401, 423.
When, therefore, land is conveyed and the purchaser at the same time gives back a mortgage or other incumbrance to secure the purchase-money, he does not thereby acquire any such seisin or interest as will entitle his wife to dower, or his creditor to subject the land to his debts discharged of the mortgage. In such cases the deed and mortgage are regarded as parts of the same contract, and constitute but a single transaction, investing the purchaser with the seism for a transitory instant only. In the same manner a deed of defeasance forms with the principal deed but one agreement, although it be by a separate and distinct instrument. Gilliam v. Moore, 4 Leigh, 32; Wilson v. Davidson, 2 Rob. R. 384, 398. If both instruments bear date the same day, it will be presumed they were executed at the same time in absence of proof to the contrary. And even though the mortgage bears date subsequent to the date of the deed of conveyance, if it appears they were acknowledged on the same day and recorded, at the same time, it maybe inferred they were executed together, and intended to take effect attire same time. Pendleton and wife v. Pomeroy, 4 Allen R. 570. If at the time of the sale and purchase, the purchaser on receiving a conveyance from the vendor, is at the same time to execute a mortgage of the property to secure the payment of the -purchase-money, and the giving the mortgage is delayed owing to a difference between the parties as to the provisions to be inserted therein, but is subsequently executed in fulfilment of the original contract, the same principle *802 applies, asid the lien of the mortgage will take precedence of a mere judgment lien upon the property. Wheatley's heirs v. Calhoun, 12 Leigh, 264; 1 Scribner on Dower, and cases there cited.
The principle upon which this doctrine proceeds is that a court of equity looks upon that as done which ought to he done. ' That court considers all agreements as performed which are made for a valuable consideration in favor of those entitled to insist upon the performance, so that neither party will suffer prejudice or derive any undue advantage from anon-compliance with the contract.
A different rule would no doubt apply to the case of a bona fide purchaser for valuable consideration acquiring title to the property before the execution of the mortgage and in ignorance of the arrangement. But with respect to creditors they stand on no higher ground than the debtor, and must take the estate as he holds it.
The deed of release executed by the appellees, “W. D. Nutt and the trustees, bears date the 1st of August, 1866, and the deed of trust given by James ~W. Darne, for the benefit of TY Nutt, bears date 31st of October following. So that it would seem there was an interval of nearly three months between the execution of the two deeds. The appellant claims that in this interval James W. Darne was invested with both the legal and equitable title, and the lien of his appellant’s judgment attached upon the land to the exclusion of the trust deed.
- But if we examine the certificates of the justices of the peace, and of the notaries public appended to the deed of release, we find that deed was not acknowledged by either of the parties until the 2d November, 1866, nor admitted to record until the 14th of November.
*803 Looking at the deed of trust of the 31st of October we find that deed was acknowledged by the parties on the second of Novembei’, and admitted to record the same day as the deed of release. It is therefore fairly to be presumed that the two deeds were delivered on the same day, and that they were intended to take effect at the same time.
It was so held in the Massachusetts case already referred to, and in the absence of proof to the contrary, such a presumption is reasonable and just. But this is not all, the recitals in the deed show their connection with each other. The deed of release refers to the deed of trust given by Richard II. Larne and James W. Larne on the first day of January, 1856, to secure the payment of the purchase-money for the land sold them by the appellee, and the deed of trust of the 31st of October, 1866, refers to the deed of conveyance executed by the appellee to Richard H. and James W. Larne the 1st day of January, 1856. It is impossible to resist the conclusion that these four deeds are connected, and constitute parts of the same transaction. The only difficulty in the way is there is nothing on the face of the deeds to show that the debt secured by the second deed of trust is the sanie debt provided for in the deed of trust of 1856. But this is fully supplied by the parol testimony. It appears from the evidence that Richard H. and James W. Larne purchased the land of the appellee in 1856, and received a conveyance therefor, and at the same time executed a deed of trust to secure the unpaid purchase-money. Considerable time elapsed and no part of the debt was paid. It became appai’ent that Richard II. Larne could not comply with his part of the contract, and in 1866 it was agreed that James "W. Larne should become the sole purchaser; that a deed of release of the trust deed should be executed to him, and *804 simultaneously therewith he should execute a trust deed to secure the purchase-money still due the appellee. Accordingly the deed of release of the 1st of August, 1866, was prepared and signed. Why the trust deed was not prepared .at the same time is not explained; but although the trust deed was not signed until the 31st day. of October, 1866, as has been seen, both deeds were acknowledged on the same day, and the parol testimony shows that the deed of release was in fact not acknowledged and delivered until the deed of trust was also acknowledged and delivered. It is impossible on reading this record to entertain a doubt that this is a true version of the transaction, precisely what the parties intended, and what was actually done by them.
The learned counsel has argued that parol testimony is inadmissible to contradict or vary the recitals in the deeds, or to show that the deed of August 1st, 1866, was not delivered on the day of its date. Eo rule is perhaps nowT more firmly established than that the parties are not concluded, by the date of the deed or the recital of the consideration therein. It is competent always to show by any relevant evidence that the delivery was in fact on a day different from the date, and to show the real nature and character of the consideration. 15 John. R. 463; Mabery v. Brien, 15 Peters R. 21.
If, as contended by the counsel, the questions propounded to the witness were leading, it ivas incumbent upon the appellant not merely to except at the time, but to bring the matter to the attention of the court below and obtain an order for the suppression of the objectionable answers. This not having been done, this court is precluded from considering the exceptions to the interrogatories for the alleged reason that they 'are leading. But the objection mainly relied on is that the testimony comes too late; it was taken after *805 the decree settling the rights of the parties, and no sufficient reason or excuse is assigned for not having produced it earlier.
"Whether a rehearing shall or shall not he granted in any case is a matter within the sound discretion of the court. If the application is based solely on the ground of after-discovered evidence, the party must of course bring himself within the rule which requires he should show due diligence.
A rehearing may, however, he granted on other grounds. It may he granted on the merits of the case as they stood at the former hearing, if the chancellor has reason to doubt the correctness of his former opinion. The practice of granting rehcarings where justice has not been done is favored by the courts. It tends to lessen litigation and the expense of appeals to this court. 2 Rob. Prac. 389. In the present case it docs not distinctly appear whether the depositions were or were not brought into the cause before the petition for a rehearing was filed. It does not matter, because if we exclude the depositions from our consideration, and look alone to the deeds, it was plainly a case proper for a rehearing upon the merits. If, on the other hand, we look to the parol evidence, there cannot he a doubt that the circuit judge wisely exercised his discretion in granting a rehearing. There is no rule of practice or of law which precludes the party from taking new evidence upon a question of fact passed upon by an interlocutory decree, even before a rehearing is obtained.
The introduction of such evidence depends on the sound discretion of the court and all the circumstances of the particular case. Dunbar’s ex’or v. Wood’s ex’or, 10 Leigh, 628; Moore v. Hilton, 12 Leigh, 1.
Prom what has been said, it is manifest this discretion has been wisely exercised in this particular case.
It is further insisted that the dealings between the *806 appellee and the purchasers of the land have resulted ™ a novation of the debt and an entire extinguish-of the lien given to secure its payment. The unpaid purchase-money secured by the first deed of trust amounted to $1,900, payable in three instalments, with interest thereon, payable semi-annually.
By the new arrangement, Richard H. Darne was released, and James ~W. Darne executed his two bonds, to the appellee, secured by the trust deed bearing date 1st September, 1866, each for the sum of $1,000 in gold coin, one payable in two and the other in three years, bearing semi-annual interest, and another note for $242, with interest from date. The parties, it seems, considered the original debt as payable in gold, and in 1866, when the new arrangement was made, the Federal currency was not only greatly depreciated, but subject to constant fluctuations. They, therefore, stipulated that as the debt was originally a specie debt, it should retain that character throughout. The only substantial change made was in the release of one of the parties and in the agreement to give still further indulgence. It is easy to see, however, that it is the same debt due for the purchase of the land, never paid or extinguished. Apd it has been so treated throughout.
In Knisely v. Williams, 3 Gratt. 265, the vendor took a bond for the purchase-money. He afterwards agreed to take from the vendor an order on a third person, payable at a distant day, for the amount of the bond. The order was given and the bond surrendered; but when the order was presented the drawee refused to accept it. It was held that the new arrangement did not afiect the lien for the purchase-money, and the vendor was at liberty to resort to it and enforce it upon the failure to collect the order.
In Yancy v. Mauck, 15 Gratt. 300, after the purchaser *807 hacl given his bonds for the purchase-money, a new arrangement was made, by which those bonds were surrendered and other bonds were given with parties to third persons; and it was held that this change of the contract did not affect the lien for the purchase-money. Judge Alien, in delivering the opinion of the court, quotes, with approbation, what is said in Watts v. Kinney, 3 Leigh, 272, 295, on the same subject : That a court of equity looks to substance, not to form; it looks to the debt which is to be paid, not to the hand which may happen to hold it; that the fund charged witlnits payment (the land here) shall be so applied whosoever may be the person entitled, and it considers a debt as never discharged until it is discharged by payment to the proper person and by the proper person. These authorities are decisive of "the question. ,
It is argued that the deed of trust of October, I860, secures to the appellee advantages to which he is not justly entitled under the original contract. By the new arrangement it is said the interest is compounded to make the accrued interest an interest-bearing fund, and this new interest-bearing fund is further augmented by an enormous gold premium, the effect of all which is to give to the appellee $2,780 in currency, against a principal of $1,900 in currency, and this large excess is interposed against the appellant after his judgment lien had attached.
We do not deem it necessary to enquire whether or not this point is well taken; the question does not properly arise at this stage of the controversy. This is an appeal from a decree granting a rehearing, and all we have to do is to determine whether the rehearing is propel’. When the case goes back to the lower court for further proceedings that court1 will then ascertain the *808 amount justly due the appellee. If the deed of trust includes more than he is entitled to as against the appellant, the deed can be reformed in that particular. In the absence of fraud, and nothing of the kind is pretended here, the deed of trust will be held good for whatever the appellee may justly claim.
Before leaving this branch of the case it is necessary to enquire whether the decree of which the rehearing was allowed is an interlocutory or final decree. The learned counsel for the appellant maintains it is final. We are of opinion this is an entire misconstruction of the decree. After declaring that the judgment liens have priority over the trust deed, the decree directs the sale made by the trustee be set aside, and the land sold again at public auction, or at private sale, as the commissioners might deem best, upon a credit of one, two, three and four years, and the commissioners are directed to report their proceedings to the court. It was further provided that one of the commissioners of the court shall ascertain and report the several liens on the land, and their priorities. That a decree of this character is interlocutory and not final is settled by numerous decisions of this and other courts. See Cocke's adm'r v. Gilpin, 1 Rob. R. 20; Ambrous' heirs v. Keller, 22 Gratt. 769, where the whole subject is fully discussed. See Craighead v. Wilson, 18 How. U. S. R. 199; Beebe v. Russell, 19 How. U. S. R. 283.
After all, perhaps, the enquiry is not very material, for if the. decree is to be regarded as final, the petition for a rehearing may be treated as a bill of review', and such proceedings had thereunder as are appropriate to that mode of proceeding. Several other points are made in the petition-for an appeal, but what has been said disposes of the most material.
Thus far the case has been considered on its merits. *809 Another question, however, arises, and that is whether the appellee is not barred of his remedy by the previous decrees and proceedings in the cause. .
It is insisted that the circuit court having affirmed the decree of the county court, the decree of affirmance is conclusive until reversed by this court. In such a case, it is said, a petition for a rehearing or a bill of review would not lie in the circuit court, the only remedy being an appeal. In support of this view the act of March 3d, 1873, is relied on.
.It is sufficient to say that act has not the slightest application to the case. It applies only to causes pending in the county court at the time of its passage, and provides for their removal into the circuit court, where they are to lie proceeded in as if they had been originally commenced in that court. The appeal was allowed in the case before us in April, 1872, and was perfected long before the act of March, 1873, was passed. See Code 1873, p. 1029.
The twenty-fifth section of chapter 178, Code of 1873, provides that when any judgment, decree or order of a county court is reversed or affirmed, the cause shall be retained in the circuit court and there proceeded in, unless by consent of parties, or for good cause shown the appellate court otherwise directs. Under the operation of- this statute, so soon as the appeal was allowed and perfected, the cause was at once transferred to the circuit court, and became a pending cause in that court. It was, therefore, not affected by the act of March 3,1873, which, as has been seen, applied only to causes pending. in the county court:
The county court, by its decree of March, 1872, held that the lien of the appellee under his deed of trust was subordinate to the judgment lien. The appellee here appealed to the circuit court, and that court, at the Octo *810 ber term of 1873, affirmed the decree of the county court; hut during the same term the appellee applied for and leave to file his petition for a rehearing. The question arises whether, after an affirmance of a decree a ccmnty court, it is competent for the circuit court to grant a rehearing. "Whatever difficulty there may be in the exercise of such a power after the term is ended, there certainly can be none when the application is made during the same term the decree of affirmance is entered.
Every court, whether appellate or original, has during the term complete control of its decrees and proceedings, and may review or modify them at its pleasure. This court, in a proper case, never fails to exercise the power. The effect of granting leave to file the petition for a rehearing is to suspend the decree of affirmance, and to reserve to the court complete control of the case. If, upon the rehearing, the decree of the county court is reversed, the cause proceeds in the circuit court precisely as if the suit had been originally brought in that court. It is very true that in this case the application was to rehear, not the decree of affirmance, but the decree from which the appeal was taken, and the order for a rehearing is confined to the latter decree.
The circuit court no doubt acted upon the idea that the whole case was before it, in the exercise of its original jurisdiction, and that it had the same control of all the decrees and proceedings as the county court would have had if the cause had remained in that court. The circuit judge in giving leave to file the petition must necessarily have intended to suspend the operation of the decree affirming the decision of the county court. It can hardly be supposed that he would be guilty of the inconsistency of granting a rehearing of the decree appealed from, and at the same time leaving the decree of affirmance in full force and effect.
*811 Every consideration of justice and every rule of interpretation requires that we should construe the acts of the circuit court as they were manifestly designed, and the petition and the orders thereon to the whole case as it was presented in that court. So construing them, we are of opinion that there is no error in the decree of May term, 1875, and the same ought to be affirmed. A question has been made whether an appeal lies from a decree merely granting a rehearing. We have not deemed it necessary to consider that question, because the appellee made no objection on that ground, and both parties are desirous that this court shall put an end to the controversy by a decision on the merits.
Decree appirmed.