Staples, J.,
delivered the opinion of the court.
The creditors of Joseph Long, deceased, brought their suit in equity for the purpose of obtaining satisfaction of the debts due them out of the real estate in the possession of his heirs. It appeared in the progress of the cause that one of the heirs, Robert H. Long, had aliened his share of the realty to a bona fide purchaser before the institution of the suit; and was utterly insolvent.
The circuit court, by its decree entered at the March term, 1875, held that the other heirs were responsible each for his portion of the decedent’s debts, according to the value of the lands descended, but could not be held liable for the portion properly chargeable upon Robert H. Long. In conformity with this view, the court rendered a personal decree against each of the four heirs for the amount with which each was chargeable; and in default of payment, it directed a sale of the lands in their possession. *374 As this decree proved wholly unavailing with respect to Robert H. Long, the result was that the creditors received only three-fourths of the debts due them.
In March, 1879, the administrator of Joseph Ryan, deceased, filed a petition for a rehearing of the decree of March, 1875. Upon a demurrer to the petition, the circuit court was of opinion that decree was final, and for this and other reasons, deemed by the court sufficient in law, it dismissed the petition at the costs of the petitioner. From that decree an appeal was taken to this court.
The question first to be determined is whether there is error in the decree of the March term, 1875. Upon this point the decision of this court in Lewis et als. v. Overby’s adm’r, 31 Gratt. 601, would seem to be conclusive. In that case it was unanimously held (the president delivering the opinion) that the whole of the real estate of which the decedent died possessed is liable for his debts; and if one of the heirs or devisees has aliened or wasted his part of the estate, and is insolvent, the others must contribute latably to make up the deficiency, according to the value of the lands descended. No reasons are given in the opinion of the president, because the point seems to have been conceded by the counsel representing the devisees. Our attention has been called, however, to an opinion of Judge Tucker, found on page 113, 2d volume, of his commentaries, in which he states “ there is much reason and some authority for the doctrine that each heir should be held responsible only for his portion of the debts.” And he cites as authority the cases of Mason’s devisees v. Peter’s adm’rs, 1 Munf. 437; Foster & wife et als. v. Crenshaw’s ex’ors, 3 Munf. 514; Hopkirk v. Dennis & als., 2 Munf. 326. It will be found, upon.examination, the first two cases only decide that the lands of all the devisees should bear their ratable proportion of the debts, in the first instance, instead of decreeing against one, and turning him around upon the others for contribution—a principle universally conceded and repeatedly acted upon by this court.
*375 The last case—that of Hopkirk v. Dennis—holds the • A . very reverse of what Judge Tucker supposes. There it was conceded that one of the devisees had wasted his tion of the estate, and was insolvent. This court held * that the chancery court erred in not decreeing that the other devisees should pay the insolvent devisee’s portion, in due and ratable proportions, to the extent of the lands devised. That case is therefore direct authority for Lewis et als. v. Overby’s adm’r.
The statute makes all the real estate of the decedent in the hands of his heirs assets for the payment of debts, to be applied in the order in which the personal estate is applied. As long as any part of it so remains, it is difficult to see how the claim of the creditor can be resisted, unless he has in some way forfeited his right by laches or other causes. There is no injustice in this. The creditor knows that the personal estate is the primary fund for the payment of debts, and that he has no right to resort to the realty except in case of a deficiency. He is not acquainted with the condition of the estate; he knows nothing of its assets or its liabilities. In many cases the necessity of resorting to the realty is not ascertained until years after the death of the decedent.
To impose upon the creditor the burden of prosecuting inquiries upon this point, at the peril of losing his recourse against the solvent heirs, is to require of him duties which the statute certainly does not demand. On the other hand, if any one of the heirs apprehends loss by reason of the alienation or insolvency of a co-heir, he can easily take the necessary steps to protect his interests. He can bring a suit to have the estate administered under the supervision of a court of equity, or he may require a proper report of the debts and liabilities to be filed by the personal representative in the proper court, as is required by the statute. See Code 1873, chap. 127, §§3, 4, 5.
The main question in the case is whether the decree of *376 -^-arc^b 1875, is final or interlocurory. That decree, after deciding that the heirs of Joseph Long, who had not the lands acquired from their father, were liable onty lor three-fourths of his debts, proceeds to fix the amount to be paid by them respectively, and in default of su°k payment it directs the commissioners named to sell so much of the real estate of each, as was necessary to satisfy his proportion of the debts; the sale to be upon a credit of one, two and three years; the purchase money to be secured by bonds and deeds of trust; and the commissioners were directed to report their proceedings to the court at its next term.
From this statement it will be seen, the court reserved complete power over the sale, to confirm it or set it aside, as the interests of the parties might require. No title could be made to the purchaser, without further action of the court; and what is most material to notice, no disposition is made of the purchase money; no direction given to the commissioners on the subject; so that the creditors could not receive a dollar of the proceeds, nor the heirs the surplus, without a further decree. If this be a a final decree, the court has deprived itself of all control over the subject matter of controversy, and ended the cause, without giving the parties the slightest relief.
The very fact, that no direction is given as to the proceeds of sale, and that the commissioners are required to-report their proceedings to court, is conclusive that further action of the court was not only contemplated, but actually necessary.
According to the uniform decisions of this court, a decree which disposes of the whole subject gives all the relief that is contemplated, and leaves nothing to be done by the court, is only to be regarded as final. Vanmeter’s ex’ors v. Vanmeter, 3 Gratt. 142; Harvey and wife v. Branson, 1 Leigh, 108. On the other hand, every decree which leaves anything in the cause to be done by the *377 court, is interlocutory as between the parties remaining in the court.
In the language of Judge Baldwin, in Cocke’s adrn’r v. Gilpin, 1 Rob. R. 20, 27-8, when the further action o^ the court in the cause is necessary to give completely the relief contemplated, there the decree upon which the question arises is to be regarded not as final, but interlocutory. In that case, there was a decree for the payment of money, and in default of such payment for the sale of land, and for the application of the proceeds to the payment of the debt. Judge Cabell said, “such a decree is such as is usually entered in a suit to foreclose a mortgage; and he thought he might affirm without the hazard of contradiction, that there is not a single case, within the last forty years, in which such a decree has been held to be other than interlocutory.’'
The rule laid in Cocke and Gilpin has been repeatedly recognized by this court, and is now the established doctrine. Fleming et als. v. Bolling & als., 8 Gratt. 292; Ambrouse’s heirs v. Keller, 22 Gratt. 769, 774.
It is very probable that the decision' of the learned judge of the circuit court was based upon the idea that whilst the decree of March, 1875, may have been interlocutory, as respects the sale of the land therein directed to be sold, it was nevertheless final so far as it adjudicated the liability of the three heirs for the debts of the decedent. This presents a question a good deal discussed in some of the earlier decisions of this court, that is, whether a decree may be final in some of its provisions, and interlocutory in others.
One of the earliest cases on this subject is that of Templeman v. Steptoe, 1 Munf., 339. It was there held that a decree dismissing the bill as to the personal estate, and as to the real estate determining the rights of the parties, but directing an account to be taken, is not final in any respect between the parties retained in court; but is subject to revision in every part at any time before a final decree. The *378 cases of Young v. Skipwith, 2 Wash. 300; Grymes v. Pendleton and McCall v. Peachy, 1 Call. 54, 55, were cited by •the judges as sustaining this view. A question somewhat similar in its character arose in Alexander's heirs v. Coleman and wife, 6 Munfi, 328. That was a bill for partition by the devisees of James Cleveland, deceased, against other devisees of the same person, and also against John Alexander, claiming part of the land by adverse title. The bill asked for a surrender of the title deeds in Alexander’s possession, and that he might be decreed to convey to the plaintiffs.
The court entered a decree vacating the deeds under which Alexander claimed, and further decreed that the title of the complainants to the lands in the bill mentioned be quieted; and, by consent of parties, it was ordered that the cause be continued as to the other defendants. Chancellor Taylor held that this decree was interlocutory as to Alexander. Upon an appeal to this court by him, the four judges then sitting were equally divided upon the question. Judges Broohe and Roane concurred with Chancellor Taylor in holding the decree to be merely interlocutory. Judges Coalter and Cabell were of opinion that it was final. Both of these judges were careful to place their decisions upon the ground that the effect of the decree was practically to dismiss Alexander from the court and put an end to the cause so far as he was concerned. Judge Coalter said'that the cases theretofore decided to be interlocutory were cases in which all the parties remained in court, and in which it was competent for them, by motion, to have a rehearing and a reversal of the decree; and this competency to move for a rehearing seemed to result from the consideration that the parties remained in court.
It is very clear, had Judges Coalter and Cabell been of opinion that Alexander was still before the court, they would also have held the decree to be interlocutory as to him, notwithstanding it was ostensibly a final adjudication of his rights.
*379 The case of Royall’s adm’r v. Johnson, 1 Rand. 421, is not at all in conflict with the foregoing decision, lhat case decided that when a decree is made as to one of ral defendants, whose interests are not at all connected with each other, with a direction for the payment of costs as to that defendant, such a decree is final as to him, although the case may be still pending in court as to the rest. The effect of the decree was to make a final disposition of the cause as to one of the defendants, who remained no longer in court, and whose rights and liabilities were perfectly distinct from those of the other defendants.
The case of Hill’s ex’ors v. Fox’s adm’r, 10 Leigh, 587, was decided by a full court, and has been generally recognized as authority. Judge Tuelcer, speaking for the whole court, said: “It is a decree, indeed, against Nathaniel Box for a sum of money; but it further provides that if no property can be found, he shall deliver up certain trust and mortgage property to the marshal to be sold to satisfy the plaintiff’s demand. Had the creditors found it necessary to proceed to enforce this provision of the decree, it would only be done by attachment against Box in his lifetime, or by bill, demanding from his representatives or others in possession of his property a compliance with the decree, and enforcing it against them by attachment.”
It is true this course has not been taken, the creditors still insisting that there are assets. But the provision itself gives the character to the decree, for the cause never would be out of the possession of the court so long as its direct action might be called for to compel the delivery of the property. Here, then, we have a case in which there was an absolute decree for the payment of money enforcible by execution, and this decree is considered merely interlocutory, because coupled with it is a provision for the sale of land in default of payment, under the superintendence of the court and which required its further action. And the latter provision, it was held, gave character to the whole decree.
*380 The foregoing decisions were nearly all made under statutes which allowed a right of appeal only from final - decrees. The theory of these statutes was, that the court might, upon more mature reflection, correct any errors into which it had fallen in the progress of the cause, and it was better to afford it an opportunity of doing this than to subject the parties to the expense and delay of numerous appeals. Experience demonstrates, however, that in many instances unnecessary expenses and litigation would be avoided by permitting appeals from interlocutory decrees in certain classes of cases, and therefore it was, the statute allowing such appeals was passed. But that statute did not affect the well established distinction between interlocutory and final decrees. These distinctions still remain. There is no intermediate class between final and interlocutory decrees. A final decree presupposes the termination of the cause in the lower court, before that of the appellate court commences. Whatever may be the rule where there are several parties having distinct interests, it may be safely assumed that a decree cannot be in part final and in part interlocutory in the same cause, for or against the same parties who remain in court. Whenever a particular relief is contemplated, if something remains to be done by the court to make the relief effectual, that is an interlocutory decree. When no further action of the court is required, the decree is final. See Bowyer v. Lewis, 1 Hen. & Mun. 557. Whatever may be the rule and action elsewhere, this is the doctrine of the Virginia courts.
The learned counsel for the appellee occupied much of his time in an effort to show that a decree might be considered interlocutory upon the question of the right of appeal, and yet be considered final upon the motion or application to rehear. The rule would seem to be directly diverse. In those states where appeals lie only from final decrees, a decree is some times held to be final for the pur *381 poses of appeal, and not for any other purpose. See Forgay v. Conrad, 6 How. U. S. R. 201 ; Whiting v. Bank United States, 13 Peters R. 15; 4 How. U. S. R. However this may be, it is well settled that the character J . . of the decree must be determined by its provisions and not by any matter extrinsic-or subsequent, whether the application be for a rehearing or for a bill of review, or for an appeal. Bolling v. Fleming, 8 Gratt. 292. In conformity with these views, the decree of March, 1875, must be held to be interlocutory, and therefore not effected by the limitations applicable to final decrees.
That decree settled the principles of the cause, but, as has been seen, it did not give the complainants any relief; certainly not the relief to which they were entitled. It is true that there is a provision in the decree for the payments of costs by each of the heirs; but this was intended simply for the guide of the commissioner in making the sale, in the event of a default in paying the amount of the recovery fixed by the decree. Besides, according to the cases already cited, a provision for the payment of costs is ■ equivocal in its character, and not conclusive of the character of the decree.
The decree of March, 1875, being interlocutory, and being erroneous, its reversal would seem to follow, as a necessary consequence.
Perhaps the more correct course for this court to pursue would be to remand the cause to the circuit court, with leave to the appellant to file his petition for a rehearing, and the case to be thereafter regularly proceeded with, in conformity with this opinion. It seems, however, that the whole case is before us in all its aspects; and so the counsel on both sides have understood and argued it.
It is now insisted that the great laches of the appellant precludes him from all right to a rehearing; that since the decree of March, 1875, all the heirs except Mrs. Eust have become insolvent, and the entire burden of discharg *382 ^e ^rown upon her portion of the realty if that decree be reversed. It appears that the sum deagainst each of the heirs was about $1,800, principal anc^ interest. Upon the sale of Mrs. McLeod’s interest, there was a deficiency of about $300; she having aliened Porüon of the realty allotted to her before suit was brought. That deficiency has not been met by her. The interest of George A. Long was also sold for a sum largely excess of the amount for which he was liable, and the proceeds applied, as far as was necessary, in discharge of his indebtedness. The surplus remaining was, under the decree of March, 1876, paid over to him without objection, except the sum of $649.86, which is still under the control of the court; but which, by .the decree of March, 1879, w'as directed to be paid to Adam Dean, an individual creditor of George A. Long, and a party to this suit. One of the questions arising here is whether this fund shall be paid to Dean or to the appellant and the other creditors of the decedent, Joseph Long. Under the statute, a bona fide purchaser from the heir is protected; but such preference is accorded to an individual creditor of heir.
Upon familiar principles, the creditor takes the land or its proceeds as the heir himself takes it, subject to the claims of the ancestor’s creditors. The individual creditor has no claim to anything but the surplus remaining after the other creditors are satisfied. The preferable right of the latter must be recognized so long certainly as the fund remains under the control of the court. It is, therefore, clear this sum of $649 with its interest must be applied to the debts due the appellant and the other creditors of the decedent, in discharge of Robert H. Long’s indebtedness. So applying it, there will be left a very small sum, for which George A. Long is liable by reason of the insolvency of Robert H. Long. George A. Long being now also insolvent, the question is presented whether Mrs. Rust, *383 the only solvent heir before the court, shall be required to J . .pit make up the deficiency from her portion of the realty. As already stated, after the decree of March term, 1875, a siderable sum, the proceeds of the sales of his land, was 1 . paid over to George A. Long. None of the creditors objected; they neither appealed from that decree, nor did they petition for a rehearing until March, 1879—four years later. Had they done either with reasonable diligence, the money would have been withheld until a proper adjudication of the question.
In the meantime George A. Long has become utterly insolvent, and there is no prospect of realizing anything from him. As was said by the learned counsel for the appellees, a rehearing is not, as a general rule, a matter of strict legal right, but of sound discretion with the court, depending upon the particular circumstances of the case. Kendrick v. Whiting, 28 Gratt., 651; Adams’ Equity, 379. It will not be granted where the party applying has been guilty of gross laches in asserting his claim, and the adverse party will be subjected to inconvenience and loss, which might have been avoided had reasonable diligence been exercised. We are therefore of opinion, that the rehearing in this case should be confined to a reconsideration of the points hereinbefore indicated. The result will be, that in the event of the continued insolvency of Mrs. McLeod, Mrs. Rust’s liability to the creditors of Joseph Long will be the same, and no more, as it would be if George A. Long were now solvent, and able to pay his just share or proportion of the decedent’s debts.
The decree of the circuit court must therefore be reversed, the cause remanded to the circuit court, to be there proceeded with in conformity with the views herein expressed.
*384 -The decree was as follows:
This cause, which is pending in this court at its place of session at Staunton, having been fully heard but not determine^ at sa¡d place of session: This day came here the parties, by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid, is of opinion, for reasons stated in writing and filed with the record, that the decree of March, 1875, is interlocutory, and not final, and that said decree is erroneous in holding that the heirs of Joseph Long, deceased, are liable only each for his proportion of the debts of the said Joseph Long, notwithstanding the insolvency of one of said heirs. The circuit court therefore erred by its decree of March, 1879, in refusing the appellant leave to file his petition for a rehearing, and in refusing to set aside the said decree in the particular herein mentioned.
It is therefore ordered and decreed, that the said decree of March term, 1879, be reversed and annulled, so far as it conflicts with this decree, and that the appellees, the heirs of the said Joseph Long, pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here. The court is further of opinion, and it is so ordered and decreed, that in the event of the continued insolvency of Robert H. Long, the other heirs are liable for his proportion of the debts of Joseph Long, deceased, to the extent of real assets descended; that is to say, Mrs. Mary E. Rust is liable for one-third of said Robert H. Long’s proportion as aforesaid, and in the event of the continued insolvency of Mrs. Jane McLeod, the said Mary _E.'Rust is liable for one-half of the amount with which the said Jane McLeod is chargeable by reason of the insolvency of the said Robert H. Long; and the said Mary E. Rust is further liable for one-half the amount of $360.20,. *385 or whatever balance it may be with which the said Jane McLeod is chargeable as her proportion of the said Joseph Long’s debts.
The court is further of opinion, that George A. Long, being now insolvent, and a large portion of the proceeds of his real estate having been paid over to him under decrees of the circuit court, and the said creditors having failed to appeal from said decrees or to apply for a rehearing within a reasonable time, they are now precluded from asserting any claim against Mrs. Jane McLeod and Mrs. Mary E. Rust, or either of them, growing out of the failure of the said George A. Long properly to meet his proportion or share of Robert H. Long’s indebtedness; the true intent and meaning of this decree being to charge the said Jane McLeod and the said Mary E. Rust, or either ■ of them, with such sums or amount as they and each of them would be liable for, if the said George A. Long was now solvent and able to pay.
The court is further of opinion, and it is so decreed and ordered, that the sum of six hundred and forty-nine dollars, or whatever the amount may be under the control of the court, proceeds of the sale of George A. Long’s real estate, is properly applicable to the debts of Joseph Long, deceased, in discharge of Robert H. Long’s share or proportion of said debts; and the individual creditors of the said George A. Long can only claim any surplus remaing after the creditors of the said Joseph Long are satisfied.
The court is further of opinion, that if either of said heirs shall be required to pay more than his or her just proportion of the debts of Joseph Long, deceased, in conformity with the principles of this decree, it will be proper for the circuit court to render a decree for contribution against the heir primarily liable in favor of the heir so paying.
*386 It is further ordered and decreed, that this cause be remanded to the circuit court, to be there proceeded with in with the views herein expressed.
_ Decree reversed.