## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

WATTS & ALS. v. TAYLOR'S ADM'R & ALS.

JUNE 25TH, 1885.

RICHARDSON, J., absent.

1. PERSONAL REPRESENTATIVES—*Heirs, &c.*—Judgment against the first in suit to which the last were not parties, affects not the last for want of privity; and is not evidence against them in suit to subject the decedent's real estate; and Code 1873, ch. 127, § 3, does not alter the rule. *Brewis* v. *Lawson,* 76 Va. 36.

2. IDEM—*Judgment creditor.*—Yet, suit against personal representatives jointly with heirs, &c., by creditor of decedent, to collect out of real estate or otherwise, bond debt whereon judgment existed against personal representatives, is maintainable by evidence other than said judgment, though said judgment be set forth in the bill, the heirs, &c., having as full opportunity to defend against the debt as though no judgment existed.

3. IDEM—*Case at bar.*—Intestate left lands, slaves and other personalty; also widow and adult children, who divided among themselves the lands and chattels, leaving administrator only certain choses in action wherewith to pay debts. Account of administration, as nearly accurate as lapse of time and meagre evidence allowed, showed him in advance to estate with nothing wherewith to pay judgment obtained against him by decedent's creditor, who sued, in chancery, administrator and his sureties, and the widow, heirs and distributees, to collect out of decedent's unaliened lands, or otherwise, the bond debt represented by said judgment.

HELD :—

 1. The suit may be maintained against the heirs, &c., to collect the debt out of the unaliened lands, upon evidence *other than* the judgment.

 2. Equity will allow resort at once to said lands, instead of going upon the sureties of the administrator.

Appeal from two decrees of circuit court of Tazewell county, rendered November 15th, 1879, and May 19th, 1882, respectively, in the cause wherein James W. Smith, sheriff of said county, and as such administrator *d. b. n. c. t. a.* of John W. Taylor, deceased, was plaintiff, and Jane M. Watts, wife of Sterling F. Watts, George P. George and Rhoda I. George, in their own right and as personal representatives of John B. George, deceased, and others, were defendants.

The object of the suit was to subject the lands of said decedent in the hands of his heirs, among whom the lands and personalty had been mainly divided, to pay a debt due by bond executed by said John B. George to said John W. Taylor, whereon judgment had been rendered at November term, 1873, against the former's personal representative, who had nothing wherewith to pay it, and to whom the estate was indebted. Circuit court held that the plaintiff was entitled to subject the said lands at once to the payment of the debt without going upon the sureties of the personal representative of John B. George; and from this decree Mrs. Jane M. Watts, by her next friend, &c., and her trustee, R. C. Fudge, appealed to this court.

Opinion states the facts.

*Joseph W. Caldwell, Samuel W. Williams,* and *F. S. Blair,* for the appellants.

*A. J. & S. D. May, J. H. Gilmore* and *W. R. Staples,* for the appellees.

HINTON, J., delivered the opinion of the court.

This was a suit in equity, brought by James W. Smith, sheriff of Tazewell county, and as such administrator *de bonis non,* with the will annexed, of John W. Taylor, deceased, against the administrator and administratrix of John B. George, deceased, as

such, and their surviving sureties, and the personal representatives of those sureties who had died, and the distributees of the said John B. George, two of whom were his administrator and administratrix. The object of said suit was to recover from the estate of the said John B. George the amount of a judgment recovered in the circuit court of Tazewell county, on the —— day of November, 1873, by the executors of said Taylor against George P. George and Rhoda I. George, administrator and administratrix of the said John B. George, for the sum of $1040, with interest thereon from the 4th June, 1851, and costs, subject to certain credits, which do not reduce the balance due on said judgment below the sum of $500. The bill prays for a settlement of the accounts of said administrator and administratrix, and a payment of said balance out of any sum that might be found against them, and failing in this, then out of the real estate of the appellant, Jane M. Watts. The administrator, George B. George, in his answer, relies on the statute of limitations and the staleness of the claim as bars to the suit. He admits that no settlement of his accounts as administrator had been made; denies that he alone acted as administrator; or that he is in arrear to the estate; or that he has misapplied any of the assets of said estate. He shows that the lands and slaves belonging to the estate were partitioned between his mother, sister and himself, in pursuance of an agreement which he files with his answer; and asserts that all and every other portion of the personal estate, except debts or choses in action were, in a few months after the death of John B. George, divided and distributed between the widow and children, in pursuance of an agreement between them that the persons appointed by court to appraise the estate should do so, and that the widow and children (who consisted only of himself and sister), should take their portion at the price fixed by the appraisers. It appears that the debts due the estate and three slaves, estimated by the commissioner as worth $1200, went into the hands of the administrator, but his mother and sister allowed him, by the agree-

ment under which the land and slaves were divided, the sum of $3000, in payment of services rendered his father during life.

At the May term, 1876, the bill and amended bill were taken for confessed, and the cause was referred to a commissioner to take and settle the administration account of the administrator and administratrix, but no account of debts was directed. At the November term, 1879, a decree was rendered rejecting from the account as taken all of the personal property of which the intestate was possessed at the time of his death, " except the three negroes and the money, and the choses in action," above mentioned. And this is the first decree of which the appellants complain.

In July, 1877, the appellants Sterling F. Watts and Jane M., his wife, filed their cross-bill in this cause. The complainants, after setting out in this cross-bill all of the proceedings upon the original and amended bill, &c., go on to say, that a large amount of personal property, consisting of stock on the farms, bank stocks and debts due the intestate, went into the hands of the administrator; that John B. George at his death was, as they are advised, very little indebted—so little as to be quite inconsiderable compared to the large amount which went into the hands of the administrator and administratrix. They say that they believe that the whole fund passed into the hands of George P. George, and that he was alone active in administering the estate, and they submit to the court all questions respecting the liabilities of the administrator and administratrix, and their sureties. They ask that the account which had been ordered in the original suit may be taken and completed, and that the amount found due by and chargeable upon the personal representatives of John B. George, after paying anything found due the estate, may be decreed and distributed among the heirs and distributees of the said John B. George. The cross-bill was demurred to and answered by George P. George, the administrator, and his sureties. In their answer they deny that the complainants in the cross-bill have any right to hold

them to any responsibility arising from or connected with the estate of John B. George, for the reasons set out in the answer of George P. George to the amended bill. They aver that the appraisement, made out by Sterling F. Watts himself, is erroneous in many respects; was never adopted, and is therefore worthless as evidence of the personal estate left by the intestate. The answer then concludes with the averment that the complainants "cannot complain of the appropriation of their realty to the demands of their unsatisfied creditors, for the reason, that it has been caused by their own act in receiving and enjoying the personalty, to the exclusion of the creditors, if any, whose debts remain unpaid."

At the May term, 1882, these causes came on to be heard, when the court confirmed the report of the commissioner, which showed that the administrator was in advance to the estate in the sum of $997.04, and that there was nothing in the hands of either the administrator or administratrix out of which to pay the judgment, and decreed that the sureties of the personal representatives of John B. George were exonerated from liability to any of his distributees for the personal property distributed among themselves, and that unless the distributees should within thirty days pay the costs of the plaintiff in the original bill, together with the judgment of the complainant set out in the bill, that the land of Rhoda I. George and S. F. Watts in the bill mentioned should be rented out for the shortest term that would pay and discharge the judgment set out, and costs and commissions, and costs of renting. And this is the second decree of which the appellant complains.

Now the first objection which is urged against these decrees is, that this judgment, although good and sufficient evidence of a debt against the personal representatives and their sureties, is no evidence against these appellants, and therefore that the court had no right to decree against them for it. It must be conceded that usually one of the first steps taken in a suit in equity, brought to administer assets, is to decree an account,

not only of the personal assets and of their application, but also of the debt of the plaintiff if the suit is brought for the plaintiff alone, and of all the debts, if the suit is brought on behalf of all creditors. In this case, no such account was taken or asked for. The suit would seem, upon a cursory reading, to be brought entirely on the judgment, but upon a closer inspection, we think it may be discerned in the bill and proceedings, that whilst the draftsman, under the mistaken impression that the judgment constituted a charge on all the real estate of the intestate which had not been aliened, has given it undue prominence, yet, that the real object for which the suit was brought *was the recovery of the debt.* That such was the purpose, is established by the fact, that in both the original and amended bills, it is distinctly stated, that the judgment was recovered upon a bond which was duly executed by John B. George in his lifetime, to John W. Taylor. And that the suit was regarded and treated as a proceeding to collect this bond debt, is obvious from the fact that no objection was made in the court below by the appellants to the use of this judgment as evidence against them, as well as from the fact that they not only did not attempt to deny its existence, but sought to show that it was payable by the administrator and his sureties. Manifestly the existence of both the bond and the debt was a matter of such general notoriety, that it was regarded as a work of supererrogation to call for proof of it. In *Brewis* v. *Lawson,* 76 Va. 40, Judge Burks, after stating the general rule that "a judgment by default against a personal representative in a suit to which the heirs or devisees of the decedent are not parties, is not evidence against such heirs or devisees, in a suit or proceeding by the creditor to subject the real estate, descended or devised, to the payment of the debt," for the reason, that there is no privity between the representative and such heirs or devisees, said: "If the judgment of Anthony Lawson was the only evidence of his debt in this record, under the authority of cases adjudged by our predecessors, he could have no decree against

the lands devised to Thomas A. Brewis, which on his death descended to his heirs. But the bond on which the judgment was founded was brought into the cause by the heirs themselves. While they disputed the judgment, they did not question the validity of the bond, but on other grounds denied the liability of their inheritance for its payment. The bill, it is true, does not in terms refer to the bond, but to the judgment, as evidence of the debt. The heirs in their answer do not confine their defence to the judgment, but extend it to the debt, of which the judgment is but the evidence; and it is evident from the record that every defence was made that would have been made if the bill had been framed on the bond instead of the judgment. It would certainly have been more in accordance with the rules of good pleading, if the complainant in his bill had based his claim as against the heirs directly on the bond: but when the court sees, from the record, that the litigation was extended by the heirs themselves, without objection from the complainant, beyond the judgment to the debt itself, and that full defence was allowed and made, in like manner as if there had been no judgment, looking to substance rather than form, as courts of equity are accustomed to do, it will treat the case as if the bond instead of the judgment had been set out as the evidence of the debt. There was no necessity for the complainant to prove the execution of the bond, for it was virtually admitted by the answer."

These observations of the learned judge are pregnant with suggestions applicable to this case. Here the existence and condition of the bond is fully set out in both the original and amended bill, and its execution by the intestate, John B. George, is fully alleged. Every opportunity was thus afforded the parties to the suit to call for its production and question its validity. Had there been the slightest doubt as to its genuineness, or the credits to which it was subject, beyond a doubt it would have been called for, and a suitable defence would have been made. Under these circumstances, the failure of the heirs, administra-

tors and their sureties, to contest either the bond or judgment, cannot but be construed into an admission of the debt, and neither the heirs nor the sureties will be allowed to allege the non-existence of the debt for the first time in this court, nor to shield themselves behind a rule applicable to cases in which the parties defendant to the controversy have had no opportunity to contest the validity of the demand sought to be set up against them.

This brings me to consider the only remaining question in the case, that is, whether a decree should go against the distributees or the sureties of the personal representatives.

The depositions of S. Sisson and Rhoda I. George satisfy me that these distributees not only partitioned the slaves and lands equally among themselves, but that they parcelled out all of the personalty among themselves as well. I am also convinced that the account which has been taken is as nearly accurate as any account can be when taken at such a distance of time from the period of the occurrence of the transactions, and when there appears to be not the least likelihood of obtaining other evidence in addition to the meagre and unsatisfactory testimony afforded by this record. This account shows not only that this administrator has administered the choses in action that he retained, and the proceeds of the sale of the three negroes, but that he is in advance to the estate. It is therefore apparent, that if this debt is to be paid, the loss must fall either upon the sureties or upon the distributees, the said Rhoda I. George and Jane M. Watts—and the question therefore is, upon which of these shall it fall. Shall it be upon the sureties who had no agency in making away with the assets of this estate, or upon these distributees, two of whom were the personal representatives, and all of whom have intermeddled with and interrupted the usual and regular administration of this estate, and have appropriated it to their own private uses? Upon this point I think there can be neither doubt nor difficulty. The engagement of the sureties was, that they would be responsible for the

due administration of this estate; that is, that the personal representatives should faithfully collect the assets, pay off the debts of the estate, and turn over the rest of the personalty to the distributees; but this presupposed and assumed that any dereliction of duty which might occur in the course of the administration of the assets should not be brought about or abetted by the distributees, for no man can be allowed to take advantage of his own wrong. Had they stood aloof and awaited the regular, orderly disposition of these assets, they would have been entitled not only to all that remained after the payment of the debts, but to call upon these sureties to make good to them any loss they might sustain by reason of a misapplication of the assets by the administrator. By participating with the administrator in making distribution of the personalty among themselves they aided the administrator in the commission of a *devastavit*, and thereby exonerated the sureties from any liability to them for any assets which they, the distributees themselves, had appropriated. In such a case, equity allows the injured party to go directly against all of the wrongdoers, who are in this case the distributees. Schouler's Ex'ors & Adm'rs, §§ 332, 394; *Lewis* v. *Overby's adm'r*, 31 Gratt. 601; *Ryan's adm'r* v. *McLeod & als.*, 32 Gratt. 367.

For these reasons I am of opinion to affirm the decrees of the circuit court of Tazewell county, which are appealed from.

DECREES AFFIRMED.